LEVI SHACKELTON v. SUN FIRE OFFICE OF LONDON, ENGLAND.

*Fire insurance—Vacant premises.*

A house occupied by a tenant was insured. The tenant moved out and the landlady at once moved her own things in and began to clean up, meaning to live there herself, but the next day she had to go away for three days' absence. While cleaning the house she did not eat or sleep there, and after a few days she went off again on a business trip. While she was gone the house was burned. *Held*, that the policy had not become void on the ground that the premises were vacant.

Error to Mason. (Judkins, J.)    Oct. 21.—Nov. 19.

ASSUMPSIT. Defendant brings error. Affirmed

*Hammond & Barkworth* for appellant. An insurance policy is worthless if the tenant of the premises insured

vacates them no matter for how short a time, and it cannot be revived except by contract or such conduct on the part of the company as amounts to estoppel: *Bennett v. Agricultural Insurance Company* 50 Conn. 420; *Security Ins. Co. v. Fay* 22 Mich. 467; *N. Y. Cent. Ins. Co. v. Watson* 23 Mich. 486; *Dennison v. Phœnix Ins. Co.* 52 Ia. 457; mere storage of goods is not occupancy: *Herrman v. Adriatic Fire Ins. Co.* 85 N. Y. 162; *Cook v. Cont. Ins. Co.* Mo. Ins. L. J., Dec. 1883 p. 887; *Corrigan v. Conn. Ins. Co.* 122 Mass. 298; *Ashworth v. Builders' Ins. Co.* 112 Mass. 422; *Wustum v. City Fire Ins. Co.* 15 Wis. 138.

*James B. McMahan* for appellee. Temporary absence from an insured dwelling-house will not vacate the policy: *Cummins v. Agricultural Ins. Co.* 67 N. Y. 260; *O'Brien v. Commercial Ins. Co.* 38 N. Y. (Supr.) 517; *Dennison v. Phœnix Ins. Co.* 52 Ia. 457; *Phœnix Ins. Co. v. Tucker* 92 Ill. 64; intent is an element of occupancy unless the absence is unreasonable, and the occupancy need only be a practical one consistent with the general purposes for which the premises are intended: *Whitney v. Black River Ins. Co.* 72 N. Y. 117.

Cooley, C. J. The plaintiff sues as assignee of a policy of insurance issued by the defendant to Emma Norton, and insuring her against loss or damage by fire or by lightning to the amount of four hundred dollars on her frame dwelling-house in Ludington, described in the policy as occupied by a tenant. One of the conditions of the policy was that "this policy shall become void unless consent in writing is indorsed hereon by or on behalf of the society if any building hereby insured be or become vacant or unoccupied for the purpose indicated in this contract, or become occupied in whole or in part for other and more hazardous purposes than those indicated in this contract." Upon this condition the present controversy arises.

The policy bore date May 7, 1883, and was for one year. The insured testified on the trial that her tenant left the house June 19, 1883. She was glad of this, because she wanted to occupy the house herself. She immediately moved her things into it; her furniture and all the goods she had. She was there in the house, occupied it, and expected to make

it her home. She was getting ready, cleaning up, and doing all she could; her husband was sick, and she could only clean a little at a time, as she could not leave her husband long. On June 20th she started to take her husband to the dispensary at Chicago, and was gone not to exceed three days. She then stayed at home five or six days, leaving her things in the house all the while, but not staying there nights. Her father lived about forty rods away, and she stayed nights and took meals at his residence. The witness also had work done in the garden attached to the house. Some five or six days after her return from Chicago witness went away to canvass for certain goods which she sold, and which were principally hair-work. She went for this purpose into northeastern Michigan, and the house was burned July 4, 1883, before her return. On going away she put the premises in charge of Mr. Shackelton, who had an interest in them.

Upon this evidence and some other not material to be here mentioned, the trial judge instructed the jury that

"If a man insures his dwelling-house and lives therein at the time, and contracts not to let the building become vacant and unoccupied, he cannot as a matter of fact vacate it absolutely, leave it in that condition and recover on a policy in case of loss.

"But if he goes off temporarily on business or matters for his own benefit or otherwise—temporarily merely, with the intention of coming back to his place and there living, and with no intention of abandoning the place—the contract will not be vitiated by that kind of a transaction; and had the tenant in this case gone away on temporary business before he surrendered up the premises to this Mrs. Norton, and had the fire occurred while the tenant occupied it, there would be no question but that the company would be responsible for the loss if the going away was merely temporary with the intention of coming back and making it the home of the tenant.

"I think in this case, gentlemen, if you are satisfied by a fair preponderance of the evidence in this case, or are clearly convinced that Mrs. Norton put her things into that building with the intention of making it her home and her residence as a matter of fact,—didn't live in it in person before the fire, but after placing those things in she went away on mere

temporary business with the intention in her mind to come back and live there—that the premises would not be unoccupied and vacant within the meaning of this policy, and that the company would be responsible for the loss. She must of course have placed her goods in that building with the intention in her mind to make it her residence—to make it her home; and must have gone away on business—temporarily gone away, simply for a temporary purpose; not permanently,—not with the idea of abandoning the place; if she went away temporarily to be gone a few weeks or a few days on business of her own, with the intention of coming back and living there, I do not think the policy is vitiated; and I think the plaintiff in this cause who sues as assignee of the policy can recover in the case if you so find."

The jury, upon this instruction, returned a verdict for the plaintiff and the defendant assigns error. The only question is whether the instruction of the judge can be supported.

We have concluded, after some hesitation, that the instruction should be sustained. There is no doubt that if the insured had actually begun living in the house before her departure on business, the temporary absence would not have affected the policy: in contemplation of law, her occupation of the house would have been continuous. *Stupetski v. Transatlantic Fire Ins. Co.* 43 Mich. 373; *Cummins v. Agricultural Ins. Co.* 67 N.Y. 260; *Herrman v. Merchants' Ins. Co.* 81 N. Y. 184; *Phœnix Ins. Co. v. Tucker* 92 Ill. 64; *Dennison v. Phœnix Ins. Co.* 52 Iowa 457. The only question, then, is whether the fact that for the few days she remained at home before starting on the business trip, she did not sleep in the house or take her meals there, should make any difference. Under the circumstances we think not.

The insured had taken possession of the house, as the jury must have found, for the purposes of permanent occupancy. She had moved in her household furniture and other goods, and was cleaning and doing other work preliminary to living there in person. Nothing, apparently, was wanting to complete personal possession, except that she lodged and took her meals at her father's, a few rods off. Those facts were

not conclusive against her occupancy. It could not be justly claimed, we think, that if a family, for the purposes of cleaning and interior decoration, were thus to sleep and take meals at a neighbor's, while busy in the house in working hours, they would in doing so vacate the house. But the case of such a family would be analogous to that of the party insured in this case.

Cases are cited and relied upon on the part of the defense which we think are distinguishable on their facts. *Wustum v. City Fire Ins. Co.* 15 Wis. 138, was the case of a policy of insurance which, by its terms, required unoccupied property to be insured as such. The building insured was not occupied, but was not insured as unoccupied, and the policy was held inoperative for that reason. In *Ashworth v. Builders' &c. Ins. Co.* 112 Mass. 422, it was decided that merely using a house for the purpose of taking meals in it was not occupancy within the meaning of an insurance policy. "Occupancy," it was said, "implies an actual use of the house as a dwelling-place." "The insurer has a right, by the terms of the policy, to the care and supervision which is involved in such an occupancy." This, we think, is true; but, as we have seen, it does not follow that the presence of the occupant in the building should be continuous and uninterrupted. The necessity for temporary absences on business, or for family convenience or pleasure, is recognized, and the insured is understood to contemplate an assent to them. In *Corrigan v. Connecticut Fire Ins. Co.* 122 Mass. 298, the question was whether a tenant who had occupied a house but had moved with his family out of it and was taking his meals elsewhere, could be said to be occupying it merely because some of his furniture remained in it, and he had not surrendered the key. It was very properly held he could not. *Herrman v. Adriatic Fire Ins. Co.* 85 N. Y. 162, was still more unlike the present case, and calls for no comment.

It is suggested on the part of the defense, that the vacating of the house by the tenant, of itself put an end to the policy; but there is no force to the suggestion. The policy

-did not require a continuance of possession by the person then ·occupying; and Mrs. Norton's possession began when the ·other terminated, and was for the same purpose, namely, for a dwelling.

The judgment must be affirmed.

The other Justices concurred.