## EDDY v. THE HAWKEYE INS. Co.

1. **Fire Insurance**: FALSE STATEMENT AS TO INCUMBRANCES: SUBSE-
QUENT INCUMBRANCES: IMMATERIAL TO RISK. Plaintiff's dwelling,
worth $1,500, was insured for $700, which he seeks to recover in an
action on the policy. The policy provided that any false answers or
statements made in the application, (which was made a part of the con-
tract,) *material to the hazard of the risk,* or any subsequent incum-
brance of the property without the consent of the company, should
render the policy void. Plaintiff's farm, on which the dwelling was
situated, consisted of 240 acres. He stated in his application that it
was mortgaged for $2,000, whereas it was mortgaged for $2,600, but
the eighty acres on which the dwelling was located was not mortgaged
at all. Subsequent to the insurance, a judgment was entered against
plaintiff which became a lien on all of his land, except the forty acres on
which the dwelling was situated, which was his homestead    *Held* that
neither the false answer as to the amount of the mortgage, nor the sub-
sequent judgment, was material to the risk, and that a recovery on the
policy could not be defeated thereby.

2. ———: FALSE STATEMENT AS TO AGE OF HOUSE: NOT MATERIAL TO
RISK. Although the assured, in his application, stated that the house
insured was built in 1870, whereas in fact it was built in 1862, yet, since
it appeared that it was none the less valuable on account of its being
older than represented, *held* that a recovery on the policy could not be
defeated on account of the error or misrepresentation.

3. ———: VACATION OF PREMISES: WHAT IS NOT. Where a tenant moved
out of the insured dwelling on Tuesday, and on Wednesday morning
the owner, who lived near, took possession of the house, and with his
servants began cleaning it and preparing to move into it, and they were
continuously engaged during the working hours of each day in clean-
ing and moving goods into the house until Friday evening, intending
that the family should be fully domiciled there on Saturday, but on Fri-
day night the house was burned, *held* that the house was not vacant in
such sense as to forfeit the insurance under a policy which provided that
the company should not be liable in case the house became vacant or
unoccupied.   (See opinion for authorities cited.)

*Appeal from Buchanan Circuit Court.*

TUESDAY, DECEMBER 21.

ACTION upon a policy of insurance against loss by fire.

There was a trial by jury, and a verdict and judgment for plaintiff. Defendant appeals.

*E. J. Ingersoll*, for appellant.

*E. E. Hasner* and *H. W. Holman*, for appellee.

ROTHROCK, J.—I. The policy upon which the action is founded is dated on the twenty-fourth day of April, 1882.

1. FIRE insurance: false statement as to incumbrances: subsequent incumbrances: immaterial to risk.

The property insured consisted of a dwelling-house and contents, a barn, and certain farm implements, and live-stock. The dwelling-house was insured for $700, and it was totally destroyed by fire on the tenth or eleventh day of July, 1885.

The action was brought for the full amount of the insurance, and recovery was had therefor. Before the policy was issued, the usual written application for insurance was made, and a copy of the application was indorsed on the policy. The application and policy described the insured property as being situated on the N. W. $\frac{1}{4}$ of section 29, and the S. E. $\frac{1}{4}$ of section 30, range 8, in Buchanan county. It might be inferred from this description that the plaintiff was the owner of a farm of three hundred and twenty acres, upon which the insured property was situated. This, however, was not the fact, as appears from the evidence, and from an answer to an interrogatory in the application, which is as follows: "*Question.* How many acres of land in your farm whereon the above building stands? *Answer.* Two hundred and sixty."

The policy contains this clause: "That the basis of this contract is the said application and obligation, which shall be deemed and taken as a part of this policy, and as a warranty on the part of the assured, and any false or untrue answers or statements therein, material to the hazard of the risk, shall render this policy null and void. This contract of insurance is embraced wholly in such application and obligation of the assured, and this policy. This company

shall not be liable for any loss or damage while the above-mentioned premises shall be vacant or unoccupied.      *      * * In case any of said property shall be sold, conveyed or incumbered, whether by judicial decree, voluntary transfer, or otherwise,      *      *      * without the written consent of this company is obtained,      *      *      * this policy shall, in either event, immediately thereafter be null and void.      *      *      * "

The application contained the following further questions and answers: " (18) Is any of such land or buildings incumbered, either by mortgage, judgment, unpaid amounts on bond or contract of purchase, mechanic's liens, or otherwise? Yes. (19) If so, what is the nature of the incumbrance? Mortgage. (20) And to what amount? $2,000. (21) When is the incumbrance due? Two years. (22) Have there been any proceedings to enforce the same? No." In answer to another question, it was stated in the application that the house which was insured was built in 1870.

The defendant, by its answer, alleged, in substance, (1) that the house was vacant and unoccupied when it was destroyed by fire; (2) that the land was incumbered by mortgage for an amount largely in excess of $2,000; (3) that, after the policy was issued, the land and buildings of plaintiff were incumbered by a mortgage and a judgment without the consent of the defendant; and (4) that the dwelling-house was built in 1862, and not in 1870.

There is really no conflict in the evidence upon the issues raised by the answer. The plaintiff did not own a farm of two quarter sections. He owned the N. E. $\frac{1}{4}$ of section 29. The property insured was situated on the southwest forty acres of this tract. He also owned 100 acres in section 30, which cornered with his land in section 29. With this explanation as to the description of the land, it is sufficient to say that none of the mortgages which defendant sets up to defeat the policy were upon the land upon which the insured property was situated. All of the insured buildings were on

the S. W. ¼ of the N. W. ¼ of section 29, and there was no mortgage upon that tract, nor upon the forty acres adjoining it on the north, when the application for insurance was made, nor at any other time since then.

Counsel for appellant insists that, because there were mortgages upon other tracts in the farm, the policy is void. It seems to us that it ought to be a sufficient answer to this position to say that the defendant did not insure the land against loss by fire, and the plaintiff could not have been apprehensive that the earth would be consumed by fire during the life of the policy.

But it is insisted that the answers to the questions in the policy are warranties, and the position seems to be that, if these answers are not literally correct in every particular, there is a breach of warranty; and the defendant is discharged from liability; and, in order to hold the plaintiff to the letter of the contract, it is claimed that the questions and answers with reference to incumbrances have reference to the whole farm, and not to the governmental subdivisions upon which the insured buildings were situated. Let this be admitted, and still we think that the mortgages do not discharge the defendant from liability. It is true, the policy provides that the application is a warranty on the part of the assured, but the same clause of the policy provides what kind of untrue answers to questions in the application shall be a breach of the warranty. The clause is as follows: "*And any false or untrue answers therein, material to the hazard of the risk, shall render this policy null and void.*" It is apparent that the answer that the farm was mortgaged for $2,000, when in fact the amount was about $2,600, was wholly immaterial, inasmuch as the eighty acres upon which the insured property was situated was not mortgaged at all, and the farm, as shown by the evidence, was worth $40 an acre, and the house, which was insured for $700, was worth $1,500. The same considerations apply to the subsequent mortgage. It in no manner affected the hazard of this risk.

Before leaving this branch of the case, we desire to again refer to the fact that none of the mortgages covered the forty acres upon which the house was situated.  There is oral testimony in the case which seems to assume that a mortgage given to one Smith, after the policy was issued, was on that tract, but the copy of the mortgage introduced in evidence by defendant shows this to be a mistake; and we infer, from the arguments of counsel for both parties, that the subsequent mortgage did not embrace the land upon which the house was situated.

II.    It appears from the evidence that after the policy was issued, and before the loss, a judgment was rendered against the plaintiff for $49.75, in the district court of Buchanan county.  The defendant claims that this judgment renders the policy void.  But the evidence shows that the house and other property insured, and that part of the land upon which it was situated, had been for many years the homestead of the plaintiff, and that it was his homestead when the loss occurred.  It is true that the house had been temporarily occupied by a tenant, but it had not lost its homestead character.  The judgment was therefore no lien upon the insured property, and did not affect the contract of insurance.  This point requires no further consideration.

III.    The plaintiff in his application stated that the house was built in 1870.  The fact is that it was built in 1862.  The defendant seeks to avoid liability on this ground.  The evidence shows that the building was in good repair; that it had been kept well painted and papered; and that the value was not less by reason of having been built in 1862, instead of 1870; and the court instructed the jury to the effect that the erroneous statement would not defeat the policy, unless it was material to the hazard of the risk, as provided in the policy.  It appears to us that the jury was authorized in finding, from the evidence, that the mistake in question did not in

any manner affect the risk. Indeed, no other finding could have been fairly made, under the evidence.

IV. It will be observed, from the conditions in the policy above quoted, that the defendant was not liable for any loss or damage while the insured property should be vacant or unoccupied. The evidence shows that the house had been temporarily occupied by a tenant, who removed therefrom on Tuesday. The fire occurred on the following Friday night. The plaintiff was residing in another house on another part of the farm; and, on the next morning after the tenant moved out of the house which was burned, the plaintiff took possession of it, and his employes cleaned the house, and prepared to move in. They were constantly engaged every day in cleaning the house, and in moving in household goods, until Friday evening. By that time there were carpets and bedding and bedsteads, cans of fruit, chairs, pictures, mirrors and a stove, and clothing, a table, and dishes, in the house, and the family were expecting to be there, to remain, on Saturday. The farm stock was there, and the plaintiff, or his employes, were in and about the house every day, from 6 o'clock in the morning until 7 or 8 o'clock in the evening. The preparation for occupying the house was continuous during all the working hours of each day.

The court instructed the jury upon this feature of the case as follows: "(11) If you are satisfied, by a preponderance of credible testimony, that, immediately upon the removal of the tenant, the plaintiff took possession of the house in controversy, by himself and his employes, for the purpose of making that his home, and commenced cleaning the house, and moving his furniture therein; and so continued to work in cleaning and moving into said house without any cessation or abandonment of his purpose of making that his home; and had therein at the time of the fire certain of his furniture and household goods, so put there for use in his family; and that nothing was wanting to complete personal occu-

*3. ——: vacation of premises: what is not.*

pancy, except that he lodged and took his meals at another house, near by; and that he intended to personally occupy the house the next day with his family, had the house not been destroyed,—then the premises were not vacant and unoccupied, within the meaning of the policy."

This instruction is in full accord with the facts as disclosed in evidence, and we believe it states a correct proposition of law. The provision that a policy upon a dwelling house shall be void if the building should become vacant or unoccupied, or that the policy shall cease to be operative during such period, is not peculiar to the policy in suit. It is usually found in insurance contracts, and there are a number of adjudged cases defining the meaning of the term, "a vacant or unoccupied house," as used by parties to these contracts. There is no case to which our attention has been called which holds that a house is vacant or unoccupied by the mere fact of the physical absence of the occupants for a day or night. As was said in *Dennison v. Phœnix Ins. Co.*, 52 Iowa, 457: "Of course, the contract must receive a reasonable construction. The parties did not intend that one tenant should not move out and another move in, nor did they intend that the house should be deemed vacant if the occupant should close it, and go off on a visit, and not occupy it for a reasonable time." If such a rule should obtain, insurances of dwelling-houses would be of little value to the insured. In the case of *Shackelton v. Sun Fire Office*, 55 Mich., 288; S. C., 21 N. W. Rep., 343, the house was occupied by a tenant, who vacated it on June 19, 1883. The owner took possession, put her furniture in the building, but, for what seemed to be good reasons, she did not take her meals nor lodge in the house, and the same was destroyed by fire on the fourth day of July. The period in which the house was not occupied was much longer than in the case at bar. It was held that the house was not vacant or unoccupied, within the meaning of the contract. The case, in its facts, is much like this case. The court said: "The insured

had taken possession of the house, as the jury must have found, for the purpose of permanent occupancy. She had moved in her household furniture and other goods, and was cleaning and doing other work preliminary to living there in person. Nothing apparently was wanting to complete personal possession, except that she lodged and took her meals at her father's, a few rods off. These facts are not conclusive against her occupancy." See, also, *Cummins v. Agricultural Ins. Co.*, 67 N. Y., 260; *Herrman v. Merchants' Ins. Co.*, 81 N. Y., 184; and *Phœnix Ins. Co. v. Tucker*, 92 Ill., 64.

There is no other question in this case which demands our attention, and we are united in the conclusion that the judgment of the court below should be

AFFIRMED.