C. M. LIMBURG, Appellee, v. GERMAN FIRE INSURANCE COMPANY, Appellant.

| 90 | 709 |
| 95 | 650 |
| 90 | 709 |
| 99 | 200 |

| 90 | 709 |
| 139 | 210 |

Fire Insurance: OCCUPANCY OF PREMISES: EVIDENCE. Where a two story building, used for mercantile purposes, was vacated by the tenant occupying it, who retained one key for the purpose of showing intending purchasers a counter he had left there, but a saloon keeper, who had formerly been permitted by the tenant to use an upper room of the building to store liquors in, had in such room, within ten days preceding the destruction of the premises by fire, one or two bottles of brandy, a quantity of whiskey, a couple of boxes of wine, and some bottles, *held*, that the building was unoccupied within the meaning of the terms of an insurance policy providing that if the insured premises remained vacant or unoccupied for ten days it should avoid the policy. (1)

SAME. Permission in a policy that mechanics may be employed in a building for the purpose of making alterations or repairs for not more than fifteen days, will be construed as constituting such use of the premises an occupancy within the meaning of the above provision.

*Appeal from Keokuk Superior Court.*—HON. H. BANK, JR., Judge.

FRIDAY, JANUARY 26, 1894.

ACTION on a policy of insurance. Jury trial; verdict and judgment for the plaintiff. The defendant appeals.—*Reversed.*

*James C. Davis* for appellant.

*J. F. Smith* for appellee.

KINNE, J.—The defendant company issued to the plaintiff its policy of insurance for the sum of five

hundred dollars on a frame store building in the city of Keokuk, Iowa. The policy insured the property against loss by fire from September 4, 1890, to the fourth day of September, 1891. On March 29, 1891, the property was partially destroyed by fire. The plaintiff brings this action to recover, claiming that the loss is total. The defendant pleads a provision in the policy that if the premises "be or become vacant or unoccupied, and remain so for ten days," the policy shall be void. It alleges that, for more than ten days immediately prior to the fire, said premises had become and remained vacant and unoccupied. It also claims that the insured property was only damaged to the amount of two hundred dollars. Other issues were presented, as to which no question is now made, and they need not be stated.

I. The provision of the policy on which the defense is chiefly based is: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and remain so for ten days." It becomes necessary, therefore, to determine when, in legal contemplation, a building may be said to be "vacant or unoccupied," within the meaning of these words as used in the policy. At the outset it will be well to bear in mind that, in order to avoid liability under this clause of the policy, it is not incumbent on the defendant to show that both conditions existed for the ten days immediately preceding the fire. It is sufficient, under this provision of the policy, to defeat liability, if the building was either vacant or unoccupied for the required time, in the absence of other provisions indorsed upon or added to the policy.

A learned writer has said that the words "vacant and unoccupied" are not synonymous; that "vacant" means empty of everything but air, and that "unoccu-

pied" means that no one has the actual use or possession of the premises; and it is further said that the words must be construed with reference to the kind of structure or building insured. 1 May on Insurance, section 249a. It occurs to us that these words must also be construed in view of the uses and purposes for which the building is adapted; that is, as to whether it is so built and arranged as to be used as a dwelling house, or a store building, or a schoolhouse, or a structure fitted and adapted for use for some other purpose. Webster defines "vacant" as being "deprived of its contents; not filled; empty." The same authority defines "occupy" thus: "To take or hold possession of; or hold or keep for use; to possess." Another definition is: "To hold possession; to be an occupant." It is said that occupancy implies an actual use of a dwelling house as a dwelling place; that the insurer has a right, by the terms of such a policy, to the care and supervision which would be involved in such an occupancy. *Bonenfant v. Insurance Co.*, 43 N. W. Rep. (Mich.) 683; *Shackelton v. Sun Fire Office*, 55 Mich. 288, 21 N. W. Rep. 343; *Ashworth v. Insurance Co.*, 112 Mass. 422; *Weidert v. Insurance Co.*, 24 Pac. Rep. (Ore.) 249, was a case of insurance of a dwelling house, where the policy contained a "vacant" or "unoccupied" clause. It appeared that the plaintiff moved out of the house about March 20; that, on the next day, one McNett moved in, and remained until the twentieth day of June; and, after that time, and up to the time of the fire, the plaintiff or his hired man visited the house daily, and that some of the members of his family were at the house every day. It was held that the house was vacant and unoccupied. In *Keith v. Insurance Co.*, 10 Allen, 228, the court held that the fact that tools remained in a shop, and that it was visited daily by the son of the insured, did not constitute occupancy; that the policy contemplated

some practical use of the building. In *Corrigan v. Insurance Co.*, 122 Mass. 298, the occupant of the house had moved out, leaving in it some of his furniture, and retaining the key; and the premises were held to be unoccupied. In *Herrman v. Insurance Co.*, 81 N. Y. 184, it was held that a dwelling house was unoccupied when no one lived in it; and in *Herrman v. Insurance Co.*, 85 N. Y. 163, the holding was that occupancy contemplated the use of a house by human beings as their customary place of abode. In *Cook v. Insurance Co.*, 70 Mo. 610, the insured had moved out of the house, leaving some furniture, and leaving a man in possession of the house, and to sleep therein. He abandoned it, and afterward the house was burned, no one being then there. It was held that it was unoccupied. In *Insurance Co. v. Cherry*, 84 Va. 72, 3 S. E. Rep. 876, the premises insured consisted, in part, of a dwelling house. The evidence showed that the insured had moved out of the house; that it was not in use, except that a party had put some fodder in the outbuildings; and the buildings were occasionally visited by a resident of the neighborhood, who had the key. The building was held to be vacant and unoccupied.

In *Halpin v. Insurance Co.* (N. Y. App.) 23 N. E. Rep. 482, it was held that a building used as a morocco factory, and which was unused for about six months prior to the fire, was unoccupied within the meaning and contemplation of the parties, even though all the machinery remained in the building, and it was closed and locked, and in the hands of the plaintiff's agent for rent, and he visited it frequently. The court said "that to constitute occupancy of a building used for manufacturing purposes there must be some use or employment of the property. Its use as a place of storage merely is not sufficient. * * * The insurer has a right, by the terms of the policy, to the care and supervision

which is involved in the use of the property contemplated by the parties at the time of entering into the contract." In *Continental Insurance Co. v. Kyle*, 24 N. E. Rep. (Ind. Sup.) 727, a tenant moved out of an insured dwelling house March 26, after which one who had previously engaged the house made some repairs thereon, and kept in the house some planes, and on March 30 put some hay in the stable, and buried some potatoes on the premises, intending to move in on April 1. March 31 the house was destroyed by fire, and it was held that a policy conditioned against the premises becoming "vacant or unoccupied" was avoided. In *Insurance Co. v. Padfield*, 78 Ill. 169, it is said: "A fair construction of the language 'vacant and unoccupied' is that it should be without an occupant, without any person living in it." In *Ashworth v. Insurance Co.*, 112 Mass. 422, it is said: "Occupancy, as applied to such buildings [dwelling house and barn], implies an actual use of the house as a dwelling place, and such use of the barn as is ordinarily incident to a barn, belonging to an occupied house, or at least something more than a use of it for storage." In *Insurance Co. v. Wells*, 42 Ohio St. 519, the tenant moved out with no intention of returning, leaving in the premises a barrel of corn and a coal oil can. On the following night the building burned. It was held that it was vacant or unoccupied. In *Sleeper v. Insurance Co.*, 56 N. H. 401, the occupant of the house removed to another town, taking his family, their wearing apparel, and part of their furniture. It was held that the building was vacant and unoccupied, even though he may have intended to return in eight or ten months, and left in the house a few articles not necessary for his present use. In *Moore v. Insurance Co.*, 64 N. H. 140, 6 Atl. Rep. 27, it is held that the premises were vacant and unoccupied where the occupant had removed therefrom, though a little furniture was left in the house; and it

is also held that the terms "vacancy" and "nonoccupancy" are used interchangeably, and as equivalent in meaning. In *Dennison v. Insurance Co.*, 52 Iowa, 457, a building used as a boarding house and hotel, which had been vacated by a tenant, and stood awaiting another occupant, was held vacant and unoccupied. In *Feshe v. Insurance Co.*, 74 Iowa, 676, the tenant moved out of a dwelling house on September 26, and it was burned October 1 following. The owner lived a mile and a half away, and spent a part of each intervening day in examining and cleaning the house, but did not sleep there nights. Her father, who lived near the insured premises, left an axe and grub hoe in the house at night; otherwise it was not occupied. It was held that to all intents and purposes the house was vacant and unoccupied. It was said: "There was nothing left or placed in the house which indicated an intent to occupy it as a dwelling at any time. It is true it had been rented, and a tenant expected to take possession in about two weeks subsequent to the fire; but this is immaterial." In *Snyder v. Insurance Co.*, 78 Iowa, 146, the tenant had moved everything out of the insured dwelling house except some trumpery, a box or barrel, a cross-cut saw, a pair of skates, and did not expect to return, and there was no evidence touching its future occupancy. The house was destroyed by fire the next morning. Carpenters had been at work repairing it. It was held vacant or unoccupied. In *Sexton v. Insurance Co.*, 69 Iowa, 99, the dwelling house had been vacated by the tenant about three months prior to the fire. He had left therein two or three jars, and two large four or five gallon jars, and a molasses keg, and a table. It appears also that plaintiff had in the house some tools and other things. It was held that the articles in the house did not constitute an occupancy, and that a verdict was properly directed for defendant.

Appellee relies upon and cites many cases, among

which we specially refer to the following: *McMurray v. Capital Insurance Co.*, 87 Iowa, 453, was a case where a dwelling house was insured and it was claimed that the premises had become vacant and unoccupied. The facts were that the insured had been away for several months, working at his trade. His wife and children were away temporarily on a visit to her parents. The house remained the home. None of the furniture had been removed. There was no intention to abandon it as a place of residence. The absence was for a temporary purpose only. In *Eddy v. Insurance Co.*, 70 Iowa, 472, the tenant had removed from the house on Tuesday. The fire occurred the following Friday. The plaintiff was residing in another house on another part of the farm; and on the morning after the tenant moved out, the plaintiff took possession of the house, cleaned it, and prepared to move in. Before the fire the plaintiff had in part moved in, had placed therein carpets, bedding and bedsteads, cans of fruit, chairs, pictures, mirrors, stoves, clothing, dishes, and a table, and expected to be there to remain on Saturday; and it was held that the house was not vacant or unoccupied. In *Doud v. Insurance Co.*, 21 Atl. Rep. (Pa. St.) 505, the provision in the policy was, "if the premises insured be vacated." The tenant moved out, and on the following day the owner was at the house all day, and then left, and began packing up preparatory to moving into the house herself, and in fact had placed some things in the house. She was held to be in possession, and that the house had not been vacated. *Roe v. Insurance Co.*, 23 Atl. Rep. (Pa. St.) 718, was like the *Doud case* in its facts. In *Insurance Co. v. Wood* 28 Pac. Rep. (Kan.) 167, it was claimed that the house was unoccupied within the meaning of the policy. The jury found that the plaintiff's family was residing in the house at the time it was burned, but were temporarily absent. The evidence showed that the household goods were all in the

house; that some of them had been packed; that the the plaintiff stayed in the house every night until five days before the fire, and thereafter slept at another place, because he was ill; that he was at the house every day up to the day of the fire. The court, while expressing doubts as to whether the building was occupied, held that, as the jury had so found, and there was evidence to sustain their finding, it would not disturb the verdict. In *Ins. Co. v. Brockway*, 28 N. E. Rep. (Ill.) 799, the property was a building occupied by the assured as a dwelling and storeroom. The policy contained a provision like that in the case at bar. The insured ceased to occupy the dwelling part of the building, but did occupy the store up to the time of the fire. The company contended that a failure to occupy the whole building avoided the policy. The court held that the occupancy of the store portion of the building was an occupancy under the terms of the policy. In *Ins. Co. v. Race*, 31 N. E. (Ill.) Rep. 392, the court held that by reason of special provisions in the policy the trustee therein mentioned, or the mortgagee, was not affected by a violation of the conditions of the policy by the assured as to nonoccupancy; and, further, as the proceeding was in equity, which will not enforce a penalty or forfeiture, that the company must show that the vacancy or nonoccupancy in some degree contributed towards causing the fire. In *Insurance Co. v. Race*, 29 N. E. Rep. (Ill.) 846, the insured had moved furniture in the house, and from that and other circumstances the court held it was not vacant and unoccupied.

It will be observed that few if any of the cases relied upon by the appellee sustain his contention that the premises in controversy were occupied within the meaning of that word as used in policies of insurance. Facts touching vacancy or occupancy differ in each case presented; hence each case must be determined upon its own peculiar facts. It must be conceded, also, that

the decisions of courts are not always in harmony where the facts are substantially the same. It will serve no useful purpose to further review the authorities. From them may be deduced certain rules or principles applicable to cases like that at bar. We must, in construing the meaning of the words, "be or become vacant or unoccupied," have in view not only the technical meaning of the words, but the uses for which the property is adapted, which must have been in contemplation of the parties when they entered into the contract. Again, mere use of a store building as a place in which a few articles may be left, no business being carried on therein, and the premises not being so used as to in any wise insure for them the care, watchfulness, and protection from danger to exposure to fire which must have been in contemplation of the parties to the contract, in view of the adaptability of the building for certain uses only, can not be deemed an occupancy. To prevent a policy from being avoided for vacancy or unoccupancy in such a case, the use and occupancy must be of such a character as ordinarily pertains to a building adapted for such purposes. A mere storage of property therein, which does not involve the care and watchfulness which the policy holder owes to the insurer, will not suffice to constitute occupancy.

The undisputed facts in the case at bar are that the insured property was a two story building, the lower story being adapted and used for a storeroom, with access therefrom to the story above. There was no means of access to the upper story, except by going through the storeroom. When the policy issued, the building was occupied by one Reimbold as a tenant of the plaintiff. He had a cigar store in the front part of the building downstairs, and a cigar manufactory in the rear part. There were two rooms upstairs which seem to have been but little used by the tenant. His lease expired on March 11, 1891. He moved his stock out

of the building on March 7, and on the same day he had his government license transferred to permit his carrying on business in the building to which he had moved. He had a policy of insurance upon his stock and tools used in his business. This he had properly transferred on March 6. When he moved out on March 7, he left in the building one counter, which he did not intend to move, but wanted to sell, some shelving, and some leaf tobacco in an upper room. All these articles he had taken from the building prior to March 20, except the counter, and he thinks he had them all out, except the counter, before the eighteenth of March. The counter remained in the building and was burned. The fire occurred on March 29. The tenant, when he went out, or at least by March 11, gave one key to the building to the agent of the insured, and retained the other. He retained the key so that he might show intending purchasers the counter which he had left there. He exercised no control over the property after his lease expired. During the continuance of his tenancy he had given one Masterson, a saloon keeper, the right to store some liquors in one of the upper rooms, for which Masterson was to pay him two dollars per month. He had given Masterson no authority to thus use the upper room after his own lease expired. Masterson's place of business was two or three doors from this building. He never used any part of this building as a storeroom to do business in. He simply kept a few bottles of liquor upstairs there, and, as he needed a fresh supply in his saloon, he would come there and get it. He did not come there frequently, only occasionally. He had in the building, within ten days before the fire, one or two bottles of brandy, one or two jugs of whisky, some bottles of whisky, and a couple of boxes of wine, and some bottles. It does not appear that Masterson had any key to the building after March 11, or that he was allowed any means of access to his·

goods. He had no lease from the plaintiff. He was
not thus occupying or using this upper room, after the
tenant moved out, by reason of any arrangement with
plaintiff, so far as the record shows. Nor does it appear
that his use of this room was known to the plaintiff.
The plaintiff's agent had rented the building to a new
tenant, who was to move in on March 18, but failed to
do so. At the time of the fire there was no certainty
as to when, if at all, the building would be occupied.
Certain repairs had been made in anticipation of the
occupancy of the tenant who was to move in, and failed
to do so. The plaintiff's agent testified that at the time
of the fire the plaintiff was not in any way occupying the
building, and had no tenant in there. The plaintiff's
agent was frequently in the storeroom, painting and
papering and scrubbing it out, prior to the fire. Do
these facts show occupancy? We think not. The ten-
ant who was to occupy more than ten days prior to the
fire had failed to come. No other tenant had been
found. The premises were not used for the purpose
of carrying on business therein for more than fifteen
days preceding the fire. They stood awaiting a tenant.
There is nothing to show that the plaintiff would ever
be able to rent the premises. There was absolutely no
use made of the building whatever for the ten days
preceding the fire, except that the counter of the late
tenant was in there, and the Masterson liquors, before
mentioned. The parties, when they entered into the
contract of insurance, did not contemplate that the
property would be treated as occupied if an outgoing
tenant left an old counter in the building, nor if some
one unknown to the plainiff stored a few bottles of
liquor there. Such use, if it can be dignified into a use,
of the building, insured to it practically no care and
protection whatever. Such a use, to our minds, falls
far short of a compliance with the terms of the con-
tract. That contemplated the use incident to a store,

and such a use would carry with it a large degree of protection to the property, which was not essential or possible under the facts as they appear here. The building was vacant or unoccupied for more than ten days prior to the fire. Counsel for the appellee seem to think that to hold the parties to the contract which they have voluntarily entered into, and in the absence of fraud, is technical. We can not change or ignore the agreement of the parties. We can not make a new one for them, but we must construe their agreement as we find it.

II. The appellee contends that, as the policy provides that mechanics may be employed in the building, altering or repairing it, for not more than fifteen days at any one time, and it was being repaired, that should be considered as an occupancy within the terms of the policy. We do not think so. The repairs might be made while the building was occupied. Again, it is not shown that these repairs continued up to within ten days before the fire. The provision of the policy does not indicate that it was in the contemplation of the parties that there should be no occupancy of the premises while repairs were being made. As the point is not pressed with any apparent confidence, we need give it no further consideration.

III. Under the instructions of the court the jury should have found for the defendant. Indeed, under the undisputed facts, there was no such occupancy as the policy contemplated, and hence the court would have been justified in directing a verdict for the defendant.

IV. The jury were told by the court in an instruction that, if they found that the building was not totally destroyed, and it could be repaired at an expense of two hundred to two hundred and fifty dollars, then the plaintiff's damages would be limited to the amount it would have cost to repair said building, and put the same

in as good condition as before the fire occurred, with six per cent. interest per annum thereon.   Under the provisions of the policy this instruction was proper, and, whether it was so or not, the jury were bound to follow it.   The undisputed evidence was that for two hundred and fifty dollars the building could have been made as good as it was before the fire.   The jury disregarded the court's instruction and found for the plaintiff for the full amount of the policy, with interest.   The court should have set the verdict aside for the reasons given.   Reversed.