MARY C. TEEPLE, Appellee, v. FRATERNAL BANKERS' RESERVE SOCIETY, Appellant.

**INSURANCE:** Avoidance of Policy—Warranties and Representa-
1    tions.  A statement or answer in an application or policy of insurance will not be construed as a "warranty," *even though repeatedly reiterated therein to be such,* (1) if, from the nature of the subject of inquiry, such answer or statement must necessarily be an expression of *opinion* by the insured, or (2) if, upon any reasonable theory, such answer or statement may be treated as no more than a "representation." So held when the answers and statements claimed to avoid the policy, because untrue in fact, pertained to the cause of death of insured's father, at a time when insured was eight years old.

**CONTRACTS:** Construction — Construction Against Party Using
2    Words.  Principle recognized that the party who arbitrarily dictates the words in which a contract is expressed, must abide by a construction most strongly in favor of the other party. Applied in an action on a policy of insurance, where forfeiture was sought on the alleged grounds of an untruthful warranty.

**INSURANCE:** Forfeiture of Policy—False Representation Made in
3, 5 Good Faith—Effect.  Principle recognized and applied that a

*false* representation, *if made in good·faith by an insured*, will not avoid the policy. Evidence reviewed, and held to show no element of bad faith in the making of untrue statements by an insured in regard to the cause of death of his father.

**CONTRACTS:** Construction—Law's Dislike for Forfeitures. A con-
4   tract which attaches an express condition of forfeiture for certain enumerated conditions will not be construed as working a forfeiture for and on account of *other* conditions not contained in said enumeration. So held where an insurer claimed a forfeiture on account of untrue statements as to the cause of death of insured's father, but the distinct clause of the policy providing for forfeiture only provided for forfeiture for untrue statements as to health, personal habits and physical condition *of the insured.*

**INSURANCE:** Forfeiture of Policy—False Representation Made in
3, 5   Good Faith—Effect.

*Appeal from Jackson District Court.*—Wm. Theophilus, Judge.

Saturday, January 20, 1917.

Action at law to recover upon a policy or certificate of insurance issued by the appellant to Marvin W. Teeple. There was a directed verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Robert Taylor, C. L. Ely, R. P. Thomas, W. H. Palmer,* and *Tourtellot & Donnelly,* for appellant.

*F. D. Kelsey* and *F. M. Fort,* for appellee.

Weaver, J.—On June 5, 1913, Marvin W. Teeple, a young man 21 years and 6 months of age, was admitted to membership in the defendant society, and received from defendant a certificate, providing,·subject to certain conditions hereinafter mentioned, that, upon satisfactory proof of the fact and cause of such member's death while in good standing in the society, defendant would pay to his mother, Mary C. Teeple, the sum of $1,000. Thereafter, on December

**1. INSURANCE:** avoidance of policy: warranties and representations.

12, 1914, Marvin W. Teeple died, while in good standing as a member of the society. Thereupon, the plaintiff, as the beneficiary of said insurance, demanded payment thereof, and, upon its refusal, brought this action for its collection.

In answer to plaintiff's petition, the defendant denied its liability upon the certificate, averring that it is a fraternal beneficiary society, and not a life insurance company; and, as an affirmative defense to plaintiff's action, alleged that the contract of insurance was not contained in the certificate alone, but also in the application by the deceased for member- ship in the society and in his medical examination, which is a part of such application. It was further alleged that, by the terms of such contract, deceased warranted that all his statements and answers made in his said application and upon his medical examination were strictly and literally true, and agreed that, if any of them should prove untrue or false, it would work an entire forfeiture of the insurance. This warranty, it was further alleged, was broken in the following particulars: In reply to a question as to the cause of the death of his father, deceased answered, "Pneumonia;" and further, that the previous health of the father was "good" and the duration of his fatal sickness was a "short time." Defendant avers that these answers were untrue, because the father did not die of pneumonia, but of consumption, or with hemorrhage of the lungs, and that prior to his death he had been ill for a long time. Further pleading affirma- tively, it was alleged in the answer that, in response to a question to the deceased whether either of his parents or any of his grandparents, brothers, sisters, aunts or uncles had been afflicted with or died of consumption or any other hereditary disease, the insured answered, "No," when in truth other relatives of the deceased related to him within the specified degrees had been afflicted with consumption and other kindred diseases. To another question, asking when and by what physician he was last attended and for what complaint, he answered, "Never had any in late years since

I can remember." The truth of this answer was denied, and defendant alleged upon information and belief that deceased had consulted a physician at various times for treatment or advice, within three years before the date of his said application. Finally it was alleged that deceased untruthfully stated that he was aware of nothing which should be made known in order to fairly estimate the risk on his life, when he knew that his father and others of his near relatives had been afflicted with consumption, tuberculosis and kindred diseases.

On the trial, the evidence offered by the defendant was directed solely to the death of the father of the insured, and of its cause and the prior state of his health. No attempt was made to show any false or untrue statements by the plaintiff as to his own health or personal history, or that he had in fact ever consulted or been treated by a physician prior to his becoming a member of the defendant society, or that he was then in fact aware of any other thing which should have been made known to enable the insurer to properly estimate the risk on his life. The proofs of death indicate that the deceased died of Bright's disease. No claim or evidence appears in the record that the disease of which the insured died was of an hereditary character, or that its origin was or could be traced to the pulmonary disease of which defendant claims the father died. Defendant does not aver nor does it offer evidence to show that, had the alleged facts concerning the father been revealed in the application made by the insured, the information so obtained would have made any difference in the action of the insurer upon the application for membership.

At the close of the evidence, the defendant moved for a directed verdict in its favor, on grounds stated as follows: That it appears from the whole evidence, and is not contradicted, that the father of the insured died of hemorrhage, and not of pneumonia as represented in the application by the assured; that said application shows, in answer to the

questions as to what disease the father of the assured died
of, that it was pneumonia, and that the evidence in this case
shows that it was not of pneumonia that he died, nor has
there been any evidence introduced showing that the father
had pneumonia, or that he died of said disease, but that, on
the contrary, he died of hemorrhage; that, in answer to Ques-
tion 21 in said application, the applicant stated that there
was no hereditary or chronic ailment on the part of his father;
and that the evidence does show that there had been a long-
standing ailment of hemorrhage, and that he had died at a
time and under circumstances showing nothing other than
hemorrhage.

This motion being overruled, plaintiff then moved for a
directed verdict in her favor, on the theory that she had
shown a clear prima-facie case for recovery, and that defend-
ant had offered no evidence on which the jury could find
there were any misrepresentations, intentional or otherwise,
made by the insured in his application, and that upon the
entire record there was no material question of fact to be
submitted to the jury. The court sustained the motion, and
there was a verdict and judgment accordingly.

I. It will be observed that, in the motions filed for a
directed verdict, both defendant and plaintiff speak of the
answers made by the insured person concerning the death of
his father as representations, rather than warranties, but it
is to be admitted that defendant, both in pleading and argu-
ment, relies upon the proposition that such answers consti-
tute strict warranties.

Turning to the record as shown by the abstracts, we find
that, in the application proper, the insured was asked no
question concerning the death or cause of death of his father,
and the only language therein on which any claim of war-
ranty can be based is the following:

"I, the undersigned, hereby apply to the Fraternal
Bankers' Reserve Society for membership and a benefit cer-
tificate therein. I declare and warrant that I am to the best

of my knowledge and belief in sound health and physical condition, and I further declare and warrant that the above statements together with the statements and answers made by me to the physician in other parts of this application are true; and I hereby agree that any untrue statements or answers or suppression of facts in regard to my health, personal habits, or physical condition in this application or in any application for renewal or reinstatement hereafter made, or any neglect to make any payment required by said society within the time provided shall render void and of no effect any benefit certificate issued on this application and in such case that all payments or assessments made thereon shall be forfeited to said society except as provided in said certificate. I declare and warrant that I am engaged in a lawful occupation and that I am not now either or occasionally, or continuously, directly or indirectly, engaged or employed in any occupation prohibited by the by-laws of said society."

The abstract does not set out or contain the medical examination in full, and so much of the part shown as has any relation to the single issue which was in fact tried is as follows:

"(20) Family History:

| | Age if Living | State of Health | Age at Death | Specific Cause of Death | Duration and Character of Fatal Illness | Previous Health |
|---|---|---|---|---|---|---|
| FATHER | | | 25 | Pneumonia | Short Time | Good |

"(21) Have either of your parents or any of your grandparents, brothers, sisters, aunts or uncles been afflicted with or died of consumption, apoplexy, heart disease, cancer, insanity, or any hereditary disease, or committed suicide? Ans. No.

"(24) Are you aware of anything not already stated that should be known in order to fairly estimate the risk on your life? Ans. No.

"I hereby further declare, that I have read and under-

stand all of the above questions put to me by the medical
examiner, and answers thereto, and that the same are war-
ranted by me to be true and that I am the same person de-
scribed as above.

"(Applicant sign name in full)    Marvin W. Teeple."

The certificate or policy contains a statement that it is
issued "in pursuance of the articles of incorporation and
constitution and by-laws of the Fraternal Bankers' Reserve
Society, and upon the representations contained in the appli-
cation for membership, a copy of which is attached hereto;
and the said articles of incorporation, constitution and by-
laws and all amendments hereafter made thereto, and said
application, and the provisions, requirements and benefits
stated on the second page hereof are hereby referred to and
made a part hereof; and the said member accepts this certifi-
cate upon the following express warranties, conditions and
agreements: that the said application and medical examina-
tion (a copy of which is hereto attached) are true in all re-
spects, and that every statement and answer made in said
application and medical examination and each and every
part thereof shall be held to be a strict warranty, and to
form the basis of the liability of this society to such member
or such beneficiary."

The doctrine or rule as to warranties in contracts of in-
surance as stated in the earlier cases is in substance that, if
any warranted statement in the application is shown not to
be the exact and literal truth, the insurance
is forfeited, and that this result must follow
even though the statement be made in the
utmost good faith, and relates to a fact which
is in no manner material to the risk against which the insur-
ance is taken. In most jurisdictions, where the legislature
has not interfered to change it, the same statement of the
rule is still adhered to; but its manifest harshness (to say
nothing of its absurd extreme of technicality) has led the
courts to greatly limit its application, by emphasizing the dis-

2. CONTRACTS:
construction:
construction
against party
using words.

tinction between warranties and representations, and by holding strictly to that other rule which requires contracts of insurance to be taken most strongly against the insurer, and that courts should so interpret the contract, if it be fairly possible, as to avoid a forfeiture.

It is now well settled that the use of the word "warrant" or "warranty" in the application or policy is of itself by no means conclusive upon the question whether, in view of the entire record, any given answer or statement of the insured is to be given technical effect as a warranty, rather than as a representation. *Lakka v. Modern Brotherhood,* 163 Iowa 159; *Sargent v. Modern Brotherhood,* 148 Iowa 600, 607; *Peterson v. Des Moines Life Assn.,* 115 Iowa 673; *Moulor v. American Life Ins. Co.,* 111 U. S. 335, 341 (28 L. Ed. 447, 449); *Port Blakely Mill Co. v. Springfield F. & M. Ins. Co.,* 56 Wash. 681; s. c. 59 Wash. 501; *Redman v. Hartford Fire Ins. Co.,* 47 Wis. 89. Indeed, in the *Mill Company* case, supra, the court goes to the extent of saying that the word "warranty" is of such general signification and of such general and discursive use that, except as it may be restrained or explained by the writing as a whole, it is "absolutely without legal significance." Again, it is said that the "rule is universal that statements in the application will not be construed to be warranties if elsewhere in the contract there can be found reason to suppose that such was not the clear understanding of the parties."

Even where it is provided by statute, as in California, that "a statement in a policy, of a matter relating to the person or thing insured, or to the risk, as a fact, is an express warranty thereof" (Cal. Civil Code, Sec. 2607), the courts hold that if, taking the entire policy in all its terms and language, it can be perceived that such was not the intention of the parties, an expression which might otherwise be held a warranty will not be given that construction, and, where there is any doubt as to the construction, the court will lean against the one which imposes upon the assured the obliga-

tions of a warranty. *National. Bank v. Union Ins. Co.*, 88 Cal. 497.

If the answer alleged to be a warranty is one which, from the very nature of the subject of inquiry, must necessarily be an expression of opinion, the warranty will not be held to extend further than to the good faith of the answer. *Supreme Ruling of F. M. C. v. Crawford*, 32 Tex. Civ. App. 603; *Lakka v. Modern Brotherhood*, 163 Iowa 159, 169; *Fisher v. Crescent Ins. Co.*, 33 Fed. 549; *Owen v. Metropolitan Life Ins. Co.* (N. J.), 67 Atl. 25.

The rule which forbids the construction of a statement or answer as a warranty, if, upon any reasonable theory, it may be treated as no more than a representation, is nowhere more convincingly stated and applied than in *Moulor v. American Life Ins. Co.*, 111 U. S. 335 (28 L. Ed. 447). In that case, the assured, after answering in the negative questions whether he had ever been afflicted with any of certain named diseases, whether his father, mother, brothers or sisters, or any of them, had been afflicted with certain diseases, and whether there were any circumstances in his personal or family history with which the company ought to be made acquainted, was then asked:

"Has the applicant reviewed the answers to the foregoing questions, and is it clearly understood  .  .  .  that any untrue or fraudulent answers, or any suppression of facts in regard to health, habits or circumstances,  .  .  .  will, according to the terms of the policy, vitiate the same?"

And to this he answered, "Yes." Following this is the declaration:

"It is hereby declared and warranted that the above are fair and true answers to the foregoing questions, and it is acknowledged and agreed  .  .  .  that this application shall form part of the contract of insurance, and that if there be in any of the answers herein made any untrue or evasive statements or any misrepresentation or concealment of facts

then any policy granted upon this application shall be null and void."

The policy itself recited that it was issued upon consideration of the representations made in the application and the payment of the stipulated premiums. It also provided that, if the representations made to the company should be found to be untrue in any respect, or if there had been any concealment of the facts, then the policy should be void. The defense relied upon by the company was that the insured had been afflicted with scrofula, asthma and consumption prior to applying for the insurance, and that for that reason the policy was by its terms void. It will be seen that, in most essential respects, the issues there presented were quite like those we have now to consider. The court, speaking by Mr. Justice Harlan, held that, notwithstanding the repeated use of the word "warranty," the statements in the application and policy were to be given effect as representations only. To better appreciate the application of that decision, we will, before quoting therefrom, call attention to some of the provisions of the application and policy in the present case. In the application, the insured says:

"I declare and warrant that I am *to the best of my knowledge and belief* in sound health and physical condition, and I further declare and warrant that the above statements, together with the statements and answers made by me to the physicians in other parts of this application, are true, and I hereby agree that any untrue statements or answers or *suppression of facts* in regard to *my health, personal habits or physical condition* in this application . . . shall render void and of no effect any benefit certificate issued on this application."

Among other things in the medical examination is the following:

"*Are you aware* of anything not already stated that should be known in order to fairly estimate the risk on your life? Ans. No."

The policy itself declares that it is issued in pursuance of the articles of incorporation and constitution and by-laws of the society, and upon "the representations contained in the application for membership." It may also be added here that, while the application and policy refer to the defendant's articles of incorporation, constitution and by-laws, making them a part of the contract, neither appears to have been offered in evidence, nor are they embodied in the abstract, and we are, therefore, without anything in the record to inform us as to what extent, if any, they affect the terms of the insurance. Bearing in mind this condition of the record, we return to Judge Harlan's discussion of the principle governing such contracts. It will be remembered that, in the application there made, the insured had been asked whether he himself or his parents, brothers or sisters had ever been afflicted with certain named diseases, and to each inquiry he had answered, "No." He was also asked the same general question concerning the existence of any other fact bearing upon the risk of which the company ought to be informed, and this he also answered in the negative, and this was followed by practically the same words of alleged warranty used in this case. The opinion says, "There was undoubtedly evidence tending to show that the insured had been afflicted with those diseases, or some of them, prior to his application." In submitting the case to the jury, the trial court had instructed that the statements of the insured were warranties, and that, if not strictly true, the insurance was forfeited, even though the insured answered the questions in good faith. In passing upon this question, the Supreme Court concedes the rule as to strict warranties to be as stated by the trial court, but says that:

"Unless clearly demanded by the established rules governing the construction of written agreements, such an interpretation ought to be avoided. In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that a person took a life policy with the

distinct understanding that it should be void and all premiums paid thereon forfeited if at any time in the past, however remote, he was, whether conscious of the fact or not, afflicted with some one of the diseases mentioned in the question to which he was required to make a categorical answer. If those who organize and control life insurance companies wish to exact from the applicant as a condition precedent to a valid contract a guaranty against the existence of diseases, of the presence of which in his system he has and can have no knowledge, and which even skillful physicians are often unable after the most careful examination to detect, the terms of the contract to that effect must be so clear as to exclude any other conclusion.''

Again, the court says:

'' 'When a policy of insurance contains contradictory provisions, or has been so framed as to leave room for construction, rendering it doubtful whether the parties intended the exact truth of the applicant's statements to be a condition precedent to any binding contract, the court should lean against that construction which imposes upon the assured the obligation of a warranty.' . . . These rules of interpretation . . . forbid the conclusion that the answers to the questions in the application constituted warranties to be literally and exactly fulfilled as distinguished from representations which must be substantially performed in all matters material to the risk; that is, in matters which are of the essence of the contract. We have seen that the application contains a stipulation that it shall form a part of the contract of insurance; also that the policy purports to have been issued upon faith of the representations and answers in that application. Both instruments, therefore, may be examined to ascertain whether the contract furnishes a uniform fixed rule of interpretation and what was the intention of the parties. Taken together, it cannot be said that they have been so framed as to leave no room for construction. The mind does not rest firmly in the conviction that the parties stipu-

lated for the literal truth. of every statement made by the insured.''

Summing up its conclusions in this respect, the court then says:

''Looking into the application upon the faith of which the policy was issued and accepted, we find much justifying the conclusion that the company did not require the insured to do more when applying for insurance than observe the utmost good faith and deal fairly and honestly with it in respect of all material facts about which inquiry is made and as to which he has or should be presumed to have knowledge or information. . . . The entire argument in behalf of the company proceeds upon a too literal interpretation of those clauses in the policy and application which declare the contract null and void if the answers of the insured to the questions propounded to him were in any respect untrue. What was meant by 'true' and 'untrue' answers? . . . In one sense, a statement is untrue which does not express things exactly as they are. But in another and broader sense, the word 'true' is often used as a synonym of 'honest, sincere, not fraudulent.' Looking at all of the clauses of the application in connection with the policy, it is reasonably clear—*certainly the contrary cannot be confidently asserted*—that what the company required of the applicant as a condition precedent to any binding contract was that he would observe the utmost good faith towards it and make full, direct and honest answers to all questions without evasion or fraud and without suppression, misrepresentation or concealment of facts with which the company ought to be made acquainted.''

The principle which is recognized throughout all this discussion by our court of last resort was adopted and followed by this court in the *Lakka* case, supra. In that case, the provisions of the contract which the insurer sought to rely upon as a warranty, while not identical in language, do not differ materially from that employed in the contract here. sued upon. There, as here, the insured first warranted his

present physical condition to the best of his knowledge and belief, and then added a general phrase applicable to his answers generally, and agreed that any untrue statement or answer or concealment of fact, intentional or otherwise, should forfeit the insurance. The insured, among other things, had answered that he was never afflicted with pleurisy, pneumonia or heart disease. Within 10 days after taking out the insurance, he died from the formation of a blood clot in the heart. An autopsy disclosed also a congested lung and evidences of pleurisy. There, as here, was a directed verdict and judgment for plaintiff. To the plea of warranty, we held that, to sustain the defense or to be entitled to go to the jury thereon, there must be some evidence of bad faith in the statements made by the insured, and said:

"We do not overlook the fact that the warranty is repeated a number of times throughout the application, and that it is very sweeping in form, and that it is so repeated without the qualification which we have noted. We think, nevertheless, that such qualification should be deemed to run with the declaration wherever repeated. [See, also, 2 Cooley's Briefs on Ins., p. 1146, and cases therein cited.] . . . Indeed, if the qualification were wholly absent, we are impressed with the view that the legal effect of the declaration of warranty would still be the same and that we could not give to these words the literal and absolute effect contended for by the defendant. . . . If such a provision were enforceable regardless of good faith of the insured, and regardless of his knowledge of hidden infirmities, no person could know whether he was insured or not.' . . . The form of the question necessarily calls for an opinion, and an agreement to warrant the truthfulness of the answer is no more than to warrant that the applicant will make a bona fide answer as to his opinion of the character of his ailment."

It is true that the representation in the cited cases had reference to matters pertaining to the health and physical

condition of the insured himself, while in this case the repre-
sentation relied on as a warranty pertained
to the disease of which his father died; but
if an applicant, when (as in this case) he is
faced with a list of more than 50 diseases
and called to answer categorically, "Yes" or "No," whether
he is or ever has been afflicted therewith, can at best but ex-
press an opinion, how much more will his answer be a matter
of opinion when called upon to tell the name or nature of the
disease or health of another person,—and that, too, when,
upon the face of the record, he must speak from hearsay if at
all? In this case, the answers of the applicant show that he
was but a child of eight years when his father died. He
could not speak of the cause of death, or of the previous
health of his father, except as he had acquired his knowledge
through family tradition, talk and understanding. Even if
it be true that the father died of some other disease, yet if
it appears that his statements in this respect were made in
the honest belief of their truth (and there is not a word of
evidence to challenge his good faith), the authorities, as we
have seen, justify us in treating them as representations
rather than warranties. It may be that, under some circum-
stances, a mere misrepresentation, though not a warranty, may
be of a character so vitally affecting the risk that, though
made in good faith, it will afford a defense to an action on
the policy; but if so, the record here does not reveal such a
case, for it is not made to appear that the answers alleged
to be untrue were in any manner material to the risk.

II.   Again, it will be noted that the contract is framed
in language of the company's selection. On reading it, we
find that the only express and unequivocal condition for a
forfeiture of the insurance and the condition
thereof is as follows:

"And I hereby agree that any untrue
statements or answers or suppressions of fact in regard to

*(margin notes: 3. INSURANCE: forfeiture of policy: false representation made in good faith: effect. 4. CONTRACTS: construction: law's dislike for forfeitures.)*

my health, personal habits or physical condition in this application, or in any application for renewal or reinstatement hereafter, or any neglect to make any payment required by said society within the time provided, shall render void and of no effect any benefit certificate issued on this application.''

Under the maxim, *''Expressio unius est exclusio alterius,''* it may well be said that, the insurer having thus attached an express condition for forfeiture for any untrue statements as to the health, habits or physical condition of the insured, it follows quite of necessity that such penalty was not intended to apply to other conditions not there mentioned, and that other statements, even though called warranties, should be given the legal effect of representations only. This principle seems to have been applied by this court in *Eddy v. Hawkeye Ins. Co.*, 70 Iowa 472, 475. There the policy in express terms provided that ''the basis of this contract is the said application and obligation, which shall be deemed . . . a warranty on the part of the assured, and any false or untrue answers or statements therein, material to hazard of the risk, shall render this policy null and void,'' and it was held that, notwithstanding the express declaration of warranty, and the admitted fact that some of the statements in the application were not true, yet a forfeiture could not be declared except upon showing a violation of the added clause. So, too, where the contract declares that the statements by the applicant are warranties, it is quite generally held that, if the assured further states that he has made a full and true statement of the facts so far as known to him, the courts will not construe the agreement as imposing upon him the obligation of a strict warranty. *Noone v. Transatlantic Fire Ins. Co.*, 88 Cal. 152; *Garcelon v. Hampden Fire Ins. Co.*, 50 Me. 580. The same rule has been applied where, in the contract containing the alleged warranty, the assured also represents that no circumstance touching his past or present state of health, habits of life or physical condition has been concealed or withheld which might render an assurance more than usu-

ally hazardous, or with which the insurer ought to be made acquainted. *Continental Life Ins. Co. v. Thoena,* 26 Ill. App. 495. It will be noted that the contract in the cited case is quite like the one we are now construing. The fact that the contract in this case makes express provision for forfeiture of the insurance for any misrepresentation as to the physical health or condition of the insured, but makes no such express provision concerning the health or cause of death of his father, accords well with the reason and logic of the situation. It was the life of the applicant alone which the defendant was about to insure, and his "health, habits and physical condition" and a complete revelation of the truth in respect thereto were the matters of first and most fundamental importance. While his answers to the questions in this regard must in many respects partake largely of opinion, yet, generally speaking, no other person could answer them as fully or intelligently as he; and if his answers were given fully, honestly and in good faith, they would afford the most substantial ground available for determining whether his life was an insurable risk. It was therefore both natural and wise that the truth and good faith of his answers concerning himself should be assured by imposing a penalty of forfeiture upon their untruth. On the other hand, the death of the father and the cause thereof were, at best, matters of only secondary importance, and the same necessity for imposing a forfeiture upon any misrepresentation with respect thereto did not exist. As we have already noted, the insured was a mere child when his father died. Defendant's inquiries were expanded to the health, sickness and death, not only of his father, but of all his grandparents, uncles, aunts, brothers and sisters, concerning much of which he could not possibly answer except in the most general way, from family repute, and it would be the extreme of unreason to say that the company intended to exact, or that he intended to consent to, a forfeiture of his insurance in case his answers or opinions

with respect thereto were not the literal and exact fact. No doubt an applicant can make a warranty so sweeping and unequivocal that his insurance will be forfeited if his statement, though made in the best of faith, be found not to accord with the fact, but the intention to so bind himself must be so clear and unambiguous as to admit of no other reasonable construction. Such, as we have already said, is not the record in this case. To go to the extent contended for by appellant would be to sustain a rule by which every life insurance company or organization could render itself practically immune against liability in every case where it did not voluntarily admit liability upon its policy, and, as suggested by this court in the *Lakka* case, no policy holder could ever feel any confidence that his insurance provides any protection for his beneficiaries.

III. Finding as we do that the statement made by the insured with reference to the sickness and death of his father was a representation, and not a strict warranty, we think the record shows nothing in the evidence calling for the intervention of a jury. There is no evidence that the health, habits or physical condition of the assured were in any respect

5. INSURANCE: forfeiture of policy: false representation made in good faith: effect.

otherwise than he represented them to be, or that the disease of which he died, was or could have been due to hereditary taint or weakness, or that the certificate would not have been issued had the answer to the question been in accordance with the fact alleged in the answer. There is evidence tending fairly to show that the father died of hemorrhage of the lungs, and that on one other occasion years before that date he had an attack of that nature. But there is nothing to show that after the first occasion the man had not, to all appearance, recovered his health, or that the statement in the application that he had been sick but a "short time" prior to his death was not literally true. It may be true that the insured was not correct, according to the language of the medical profession, in naming the fatal sickness pneumonia, but there is nothing

to show that such was not the cause to which the death was attributed at the time, or was not the general understanding among the members of the family and the friends of the deceased. Even if the question had been submitted to the jury, and a special finding made that the father of the insured died from hemorrhage and not from pneumonia, the result based upon the record as a whole would not be different.

This finding renders it unnecessary for us to rule upon the errors assigned with respect to rulings upon the admission of evidence.

The judgment of the district court is right, and must therefore be—*Affirmed.*

Gaynor, C. J., Evans and Preston, JJ., concur.