McCOMB v. McCOMB.

1. Appeal and Error—Court of Appeals—Declaration of Rights
—Reversal of Finding.
   The findings of fact and law in a proceeding in the nature
   of a declaration of rights are not reversed by the Court
   of Appeals, reviewing the record *de novo*, unless they are
   clearly erroneous.

2. Declaratory Judgment—Review.
   Review by the Court of Appeals of a proceeding for declaration
   of rights is *de novo* on the entire record of the lower court.

3. Landlord and Tenant—Construction of Lease—Ambiguity.
   The general rule that ambiguous provisions in a lease must
   be construed most favorably to the lessee does not mean
   that the theory of the lessee as to the meaning of the lease
   must be adopted.                              ,

4. Sales—Definition—Uniform Commercial Code.
   A sale is the passing of title from the seller to the buyer for
   a price (PA 1962, No 174, § 2106).

5. Landlord and Tenant—Gross Sales—Traveler's Checks—
Commissions.
   Finding of trial court that entire amount received for traveler's
   checks by a seller of traveler's checks, and not only the com-
   mission paid the seller by the drawee, regardless of whether
   labeled "trust funds" or how handled, was includible in "gross
   sales" within meaning of grocery store lease providing for

---

References for Points in Headnotes
[1]  5 Am Jur 2d, Appeal and Error § 703.
[2]  5 Am Jur 2d, Appeal and Error § 872.
[3]  32 Am Jur, Landlord and Tenant § 127 *et seq.*
[4]  46 Am Jur, Sales § 2.
[5]  32 Am Jur, Landlord and Tenant § 432 *et seq.*
[6, 7]  24 Am Jur 2d, Divorce and Separation § 675 *et seq*
[8]  5 Am Jur 2d, Appeal and Error § 1014.

rent to be measured in part by gross sales as found by trial court, *held,* not clearly erroneous, especially in view of provision of lease that gross sales included sales of "other receipts whatsoever."

6. DIVORCE—INSURANCE—SETTLEMENT PROVISIONS.

Modification of insurance provision in divorce judgment whereby defendant was relieved of his obligation to pay premiums for plaintiff when policy was terminated by insurer *held,* not clearly erroneous.

7. SAME—SETTLEMENT AGREEMENT—INSURANCE—PROCUREMENT OF INSURANCE.

Defendant's obligation under divorce judgment to pay premiums on policy of insurance or upon equivalent coverage does not require defendant to procure insurance on behalf of plaintiff.

8. SAME—COSTS—NEITHER PARTY FULLY PREVAILED.

No costs are allowed where neither party to appeal and cross-appeal from judgment of divorce has fully prevailed.

Appeal from Calhoun; Coleman (Creighton R.), J. Submitted Division 3 June 5, 1967, at Detroit. (Docket No. 2,303.) Decided December 6, 1967.

Complaint for divorce by Eva Minnie McComb against Ronald McComb, Sr. Judgment for plaintiff, and judgment in supplemental proceeding to construe property settlement provision. Defendant appeals from supplemental judgment, and plaintiff cross-appeals. Affirmed.

*Paul Sislin,* for plaintiff.

*A. Albert Sugar,* for defendant.

McGREGOR, J. After approximately 25 years of marriage, a divorce action was filed in 1962 by the wife, plaintiff-appellee and cross-appellant in this suit. The years of marriage, while they were on

occasion very stormy, had been especially fruitful from the economic standpoint. From a humble beginning in the retail grocery business in 1937, the parties had built a large and profitable supermarket with their joint labors. The record shows that both parties had worked long hours at the store, with both doing such tasks as butchering, dressing chickens, cleaning up, et cetera. Success in the grocery business had led to a more complex operation and in the mid-1940's, the market business was incorporated, and a separate corporation was formed to hold the real estate which housed the market. These separate corporations were owned equally by the parties and any distinctions between the corporations is of little importance for our purposes until the divorce action. Nominally, the market corporation paid a percentage rental to the real estate corporation, but in fact, the corporations were "two pockets" of the family fortune.

As the marriage relationship degenerated, the parties became extremely concerned about what would become of their valuable supermarket assets as the result of a seemingly inevitable separation and divorce. The supermarket was grossing well in excess of $3,000,000 per year and because of its uniqueness, the supermarket would retain its full value only if it continued as an active business. Disposition of this major business asset was the most important issue in the divorce proceedings. An agreement was reached between the parties and formalized in a property settlement, whereby the husband received the supermarket corporation and the plaintiff received the real estate corporation. A lease agreement was attached as a rider to the property settlement, whereby the supermarket would lease the real estate for a term of 10 years at a guaranteed minimum rental of $30,000 for each

lease year, plus 1% of the supermarket's annual "gross sales" in excess of $3,000,000.

The term "gross sales" was defined in the lease agreement as:

"The entire amount of the actual sales price, whether for cash or otherwise, of all sales of merchandise, service and other receipts whatsoever, of all business conducted in or from the premises, * * * and sales by any sublessee, concessionaire or licensee on the premises * * * however * * * [excluding] * * * sales made on the premises by the Goode's pastry shop [a sublessee]."

Another issue which concededly was of importance to the parties and was not added routinely or as an afterthought, was the medical coverage provision. The plaintiff had a history of hospitalization for serious illnesses and was overweight. The property settlement required the defendant to continue medical insurance coverage of the wife under two separate insurance policies then in force:

"Provided, however, in event that either of said policies cannot continue in existence said Ronald McComb, Sr. shall provide for equivalent coverage at equivalent monthly premiums, the policy to be selected by said Eva Minnie McComb."

This appeal is from a supplemental hearing concerning the property settlement. The areas of dispute can be simply stated. The parties dispute the meaning of "gross sales" in the lease agreement and "equivalent coverage" in the medical insurance provisions.

While the lower court considered "gross sales" in relation to several items, such as vending machine receipts and bottle deposit refunds, on appeal the gross sales dispute has narrowed to a consideration of what portion of the intake of more than $100,000 annually for traveler's checks sold in the

store can be considered "gross sales." The plaintiff insists that the total face value of the traveler's checks, plus the commission paid the store for handling the checks, constitutes gross sales upon which her percentage rental should be based. The defendant husband, on the other hand, advances the theory that the money received for the face value of the checks is "trust money" and that "gross sales" is the small commission paid to the store for handling each check. The trial court ruled that the entire moneys received for the traveler's checks, regardless of whether the moneys were labelled "trust funds" or how they were handled, are a measure of "gross sales" under the lease agreement. The defendant husband here appeals the trial court's ruling on "gross sales."

As the case was presented, it is in the nature of a declaratory judgment. While this Court, in such cases, reviews the entire record *de novo*, *Theater Control Corporation* v. *City of Detroit* (1962), 365 Mich 432, we do not reverse the findings of the lower court unless they are clearly erroneous. *Coffee-Rich, Inc.,* v. *Department of Agriculture* (1965), 1 Mich App 225.

The term "gross sales" is imprecise and its definition in a given case depends mainly upon the wording established by the parties in the contract. See 52 CJS, Landlord and Tenant, § 502 at p 284; annotation 38 ALR2d 1113, 1114 (1954). The precedents offered by the parties in this case do little but illustrate that there is not a definitive judicial definition of gross sales. The defendant-appellee supports his theory that the obtaining of a traveler's check by a customer is not a sale, by analogizing the transaction to a transaction where a customer pays a utility bill at a neighborhood store, which in turn holds the payment in trust for the utility company. Michigan adopts the uniform commer-

cial code definition of a sale as "the passing of
title from the seller to the buyer for a price." PA
1962, No 174, § 2106 (CL 1948, § 440.2106 [Stat Ann
1964 Rev § 19.2106]). When a customer obtains a
traveler's check from the supermarket, the trans-
action fits the Michigan definition of a sale and is
more like a sale of goods that are held on consign-
ment than it is like the transaction of the public
paying an agent money to be turned over to a
utility company. A customer who obtains a trav-
eler's check leaves the store with a valuable prop-
erty, received in exchange for money, while a cus-
tomer who pays a utility bill leaves the store only
with a debt paid.

The lease itself is quite expansive, as it calls
for inclusion in gross sales of "other receipts what-
soever." Sales conducted at a pastry shop which
subleased a portion of the premises were specifically
excluded from gross sales. We are aware it is a
rule of construction that in cases of ambiguity
terms of a lease will be construed most favor-
ably to the lessee. *Starr* v. *Holck* (1947), 318 Mich
452. This does not mean, however, that the theory
of the lessee as to the meaning of the lease must
be adopted. While we cannot agree fully with the
trial judge's observation that the lease agreement
is unambiguous on its face, given the wording of
the lease and the nature of the traveler's check
transactions, we are convinced that the court's con-
clusion that the entire traveler's check receipts are
includible in "gross sales" under the lease agree-
ment was not clearly erroneous.

At the time of the divorce, the medical insurance
coverage consisted of a Blue Cross hospitalization
policy, and a health-and-accident-type policy from
Banker's Life & Casualty Insurance Company,
which provided cash payments to an insured during
a period of prolonged illness. Both of these pol-

icies were under a group coverage maintained by the supermarket for its employees. Not unexpectedly, the wife was relieved of her employment with the supermarket the day she ceased to be a stockholder of that corporation. By leaving the employment group, under the terms of the policies, she was no longer eligible for the group insurance policy. For reasons that are unclear, although much speculation about the reasons appears in the record of this case, the wife did not take advantage of the clause in the contract of the Banker's Life policy which allowed a conversion to individual coverage within 31 days of the termination of employment, without a medical examination. She remained on the group policy for well over a year, until the insurance company notified the supermarket corporation that the plaintiff had long since ceased to be eligible under the group policy. By that time, the liberal conversion rights had been lost. The Blue Cross coverage of the plaintiff is presently in force on an individual basis and there is no dispute over that coverage.

The plaintiff, and cross-appellant on this insurance issue, did not apply for another health policy to replace the Banker's Life policy, but testimony was introduced by an insurance underwriter that she could not have received equivalent coverage because of her previous medical history and her weight. The plaintiff had suffered from various ills since the time of the divorce, which would have resulted in payments by the Banker's Life policy, had it been in force. The theory advanced by the plaintiff and cross-appellant in this cross-appeal is that the husband is liable for the amount of the money that Banker's Life would have paid under the health policy, had it been in force, because only by such means can the "equivalent coverage" clause

of the insurance provision of the property settlement be satisfied.

The trial court ruled that the Banker's Life policy:

"Having been terminated by the insurer, the 'insurance provision' clause of the  *  *  *  divorce judgment is hereby modified to relieve defendants Ronald McComb, Sr., and Cut-Rate Food Market, Inc., a Michigan corporation, of the obligation to pay premiums on said policy of insurance, provided however, that in event other equivalent coverage at equivalent monthly premiums is procured, upon presentation to defendant, Ronald McComb, Sr., of a paid receipt for the premium for such coverage, he shall within 20 days thereafter, reimburse the plaintiff therefor.

"Nothing contained in this order shall be construed to require the defendants to procure said insurance on behalf of the plaintiff."

This Court notes that from reading the insurance provision of the property settlement, the intention of the parties was clearly that "equivalent coverage" of insurance referred to another policy of insurance, to be purchased from a commercial insurance company, as shown by the reference in the insurance provision to "equivalent premiums," and that the duty of selecting equivalent coverage was expressly placed on the plaintiff (which would include the duty to keep the previous policies in force, if that was what she desired). It is the opinion of this Court that the ruling of the trial court on this point, which resulted in this cross-appeal, was not clearly erroneous.

The judgment of the trial court on both the appeal and the cross-appeal is affirmed. No costs, as neither party fully prevailed on appeal.

GILLIS, P. J., and THORBURN, J., concurred.