## KRAJENKE v PREFERRED MUTUAL INSURANCE COMPANY

1. INSURANCE—VACANT PROPERTY—PRIMARY RESIDENCE—TEMPORARY ABSENCE.

   A homeowner's temporary physical absence from her primary residence is insufficient to render the house "vacant or unoccupied" for the purposes of an insurance policy exclusion clause which excludes recovery for vacant or unoccupied property.

2. PRINCIPAL AND AGENT—CROSS-CLAIMS—DIRECTED VERDICT— AGENT'S AUTHORITY—PRINCIPAL'S RATIFICATION.

   On a cross-claim by an insurance agent against his principal for attorney fees arising out of a law suit against both the principal and agent by an insured, a directed verdict was improper where the agent had taken actions outside of the scope of his authority and the agent's actions were never ratified by the principal, the agent was acting for himself and not for his principal when upon learning of the principal's decision to deny insurance coverage on a home repair claim the agent authorized a contractor to proceed with the repairs and stated that the agent would pay the contractor if the principal did not.

3. PRINCIPAL AND AGENT—LIABILITY OF PRINCIPAL—RATIFICATION— ACTS OF AGENT—PERSONAL CAPACITY.

   A principal's subsequent admission of liability on an insurance claim does not operate as a legally effective ratification of prior actions by an agent which actions of the agent were contrary to the instructions of the principal when they were performed, where the agent's prior actions were not done or professedly done in the name of the principal.

4. INSURANCE—JURY INSTRUCTIONS—EXEMPLARY DAMAGES—SCOPE OF CONSIDERATION—RELEVANT LAW.

   A new trial should be ordered where the instructions to the jury in an action to recover damages under a policy of insurance stated that exemplary damages may be a proper item of recov-

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance §§ 950, 952.
[2, 3] 43 Am Jur 2d, Insurance §§ 163, 164.
[4] 44 Am Jur 2d, Insurance §§ 1689, 2060, 2081.

ery without any further elucidation whatsoever as to the permissible scope of the jury's consideration of exemplary damages or the relevant law applicable.

Appeal from Oakland, John N. O'Brien, J. Submitted February 11, 1976, at Detroit. (Docket No. 23936.) Decided March 24, 1976.

Complaint by Lesley Krajenke against defendants Preferred Mutual Insurance Company, Flame Gas Utica Corporation, and Meadowbrook, Inc., to recover losses for damages to her home as a result of pipes freezing and bursting. Cross-claim by Meadowbrook against Preferred alleging an agency relationship and seeking indemnification for any losses, the costs of litigation and attorney's fees. Directed verdict and judgment for plaintiff against Preferred, for Meadowbrook on its cross-claim, for Flame Gas absolving it of liability. Jury verdict and judgment for plaintiff against Preferred for additional and exemplary damages. Defendant Preferred appeals. Reversed and remanded for a new trial.

*Paul G. Valentino,* for plaintiff.

*Maureen Holahan,* for defendant Preferred Mutual.

*Bernard N. Portnoy,* for defendant Flame Gas.

*John Arthur Hamilton,* for defendant Meadowbrook.

Before: M. F. CAVANAGH, P. J., and R. B. BURNS and J. H. GILLIS, JJ.

R. B. BURNS, J. This appeal results from a suit filed by plaintiff against the various named defend-

ants (hereinafter "Preferred Mutual", "Meadow-brook", and "Flame Gas") to recover losses for the damage to her home which occurred as a result of pipes freezing and bursting.

Plaintiff purchased an old farmhouse in September of 1970 and insured it with a Preferred Mutual homeowner's insurance policy purchased through Meadowbrook. She extensively remodeled the farmhouse and had a propane gas-fired central heating system installed. A 1000-gallon storage tank was installed by Flame Gas in October, 1970, and she contracted with them to service the home.

The damage to the house occurred during the last of plaintiff's numerous extended vacations during the fall and early winter of 1971–1972. Plaintiff discovered the damage upon returning to the house on January 26, 1972, and immediately contacted the insurance agency. Meadowbrook reported the loss to Preferred Mutual, and the latter promptly assigned the R. J. Tompkins Company, a local adjusting agency, to handle the claim.

Plaintiff's insurance policy contained an exclusion for "vacant or unoccupied" buildings "unless the insured shall have exercised due diligence with respect to maintaining heat in the building". The preliminary investigation of Mr. David Tompkins, adjuster, apparently convinced him that plaintiff had failed to exercise such diligence, a conclusion of which he informed the insurer by letter. On March 8, 1972, after receiving instructions from Preferred Mutual, Mr. Tompkins informed plaintiff that her claim was being denied.

The claims manager for Meadowbrook, a Mr. Frank Ball, had sold the policy to plaintiff. Mr. Ball testified at trial that, upon learning of Preferred Mutual's denial of coverage, he contacted the Arden Construction Company to proceed with re-

pairs to the house, informing Arden that Meadow-
brook would pay the bill if Preferred Mutual
would not. On April 6, 1972, Mr. Ball sent a
scathing letter to Preferred Mutual's claims man-
ager threatening to terminate the relationship
between the organizations unless Preferred Mu-
tual reconsidered plaintiff's claim, and enclosing
information suggesting that plaintiff had been cov-
ered by a "keep full" agreement with Flame Gas.
Mr. Ball's letter inspired a higher-level exchange
of correspondence including Defense Proposed Ex-
hibit "Q", a letter in which Mr. Frank Gobel,
Executive Vice-President of Meadowbrook, in-
formed Mr. Albert Akulonis, Vice-President of
Preferred Mutual, that "[i]t appears that our in-
sured, Leslie Krajenke *[sic]*, is the daughter of one
of our large commercial clients who is up in arms
about the claim denial and threatens to take his
business away if the loss is not satisfied". This was
confirmed by Frank Ball's testimony at trial.

On May 3, 1972, Preferred Mutual informed the
Tompkins Agency that its receipt of the new evi-
dence concerning an automatic delivery agreement
had convinced it to accept the claim. On June 16,
1972, a meeting was held between Mr. Robert
Tompkins, Mr. David Tompkins, plaintiff, and her
father, Mr. Charles Langs, to discuss her addi-
tional living expenses incurred due to the property
damage. The meeting became heated and termi-
nated abruptly. Plaintiff then ignored several at-
tempts by David Tompkins to communicate with
her by letter, and Tompkins did not proceed to
adjust out the claim. On August 31, 1972, plaintiff
commenced her action in the Oakland County
Circuit Court. Meanwhile, the Arden Company
had filed a mechanic's lien on the house for failure
of either Preferred Mutual or Meadowbrook to pay

its bill. The house was subsequently sold and the repair bill was paid out of the proceeds.

The case proceeded to trial. Meadowbrook filed a cross-claim against Preferred Mutual, alleging that Meadowbrook was always acting as agent and seeking indemnification for any losses, the cost of litigation and attorney's fees. At the close of proofs, the various attorneys moved for directed verdicts and the judge took a number of issues from the jury. Plaintiff's claim for $2,508.60 expended on repairs to the house was entered in her behalf against Preferred Mutual. Meadowbrook's request for a directed verdict against Preferred Mutual was granted, and the court took proofs and allowed $3,300 for attorney's fees incurred in defense of this claim. The court also directed a verdict in favor of Flame Gas absolving it of any liability regarding plaintiff's claim for loss or theft of tools from her farmhouse.

The trial court proceeded to instruct the jury as to the permissible scope of plaintiff's damages as follows:

"I have directed part of the verdict, as you know, and Mrs. Krajenke is entitled to recover from Preferred Mutual those damages which she suffered. She has the burden of proving the damages which she is entitled to recover, except as to the house damage, she no longer has any burden there because I've directed a verdict in her favor of $2,508.60 for that.

"She has then, still the burden of proof on her claim for additional living expenses, the tool loss and any exemplary damages for the failure of Preferred to satisfy the claim for the building damage of $2,508.60."

On its return, the jury found for plaintiff in the sum of $12,785.

On March 5, 1975, Preferred Mutual moved for

a new trial based upon allegations of error by the trial court in directing a verdict of $2,508.60 for damage to the home, error in directing a verdict for attorney's fees for Meadowbrook and error in allowing the question of exemplary damages to go to the jury. This motion was denied, and Preferred Mutual appeals.

We first consider the directed verdict finding Preferred Mutual liable under the contract of insurance for the $2,508.60 in damage to the house. We agree that plaintiff's temporary physical absence from her primary residence was insufficient under the law of Michigan to render the house "vacant or unoccupied" for purposes of the policy. *Stupetski v Transatlantic Fire Insurance Co,* 43 Mich 373; 5 NW 401 (1880), *Shackelton v Sun Fire Office,* 55 Mich 288; 21 NW 343 (1884). This directed verdict is affirmed.

We next consider the directed verdict granting Meadowbrook attorney's fees in defense of plaintiff's action, and the conclusion embraced therein that Meadowbrook was acting within the scope of its agency, or that Preferred Mutual subsequently ratified Meadowbrook's arrangement with Arden Company.

The record clearly indicates that Meadowbrook was acting beyond the scope of its agency in promising to pay Arden in the face of Preferred Mutual's denial of coverage. Plaintiff's father held substantial commercial properties, all insured through Meadowbrook. Both the testimony of Frank Ball and the letter offered as Defense Proposed Exhibit "Q" indicate the fatal degree of interference with the agency relationship resulting from the influence of Mr. Langs. We note further our belief that the exhibit should have been admitted over the objection for lack of foundation as

authenticated by witness Ball. See *Flickema v Henry Kraker Co,* 252 Mich 406; 233 NW 362 (1930).

Additionally, we note from count 3, paragraphs 21–23 of plaintiff's complaint that Meadowbrook was sued directly in its individual capacity on the Arden agreement, with no mention of any agency relationship between Preferred Mutual and Meadowbrook. But for the presence of this contract with the Arden Company, Meadowbrook would have been dismissed from the action, as was the R. J. Tompkins Company.

It is also clear that Preferred Mutual's subsequent admission of liability did not operate as a legally effective ratification of Meadowbrook's actions. In *David v Serges,* 373 Mich 442, 444; 129 NW2d 882, 883 (1964), the Court quoted with approval from 1 Restatement of Agency, 2d, § 82, p 210:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

Meadowbrook's act was not "done or professedly done on [Preferred Mutual's] account". In *Gandy v Cole,* 35 Mich App 695; 193 NW2d 58 (1971), the Court did not find that a principal had ratified the acts of his agent when the facts indicated that the agent had stated to the third party that he was acting in his own individual capacity. The Court concluded that absent a representation to the third party that the agent was working on behalf of his disclosed principal, there could be no ratification.

We do not find a ratification in this case. The

directed verdict on fees in favor of Meadowbrook was improvidently granted, and is hereby vacated. There is no question for the jury, and Meadowbrook shall bear its own fees.

We turn to the question of the submission of exemplary damages for the jury's consideration. Plaintiff claims that exemplary damages may be awarded in a contract action where the defendant has acted in a reckless, negligent or malicious manner in breaking the contract and that the defendant acted in a malicious manner and should be liable for punitive damages.

Defendant claims that as a general rule exemplary damages are not allowed for a breach of contract and that plaintiff has not submitted any proofs that would create an exception to the general rule.

In *Frishett v State Farm Mutual Insurance Co,* 3 Mich App 688, 692, 693; 143 NW2d 612, 614 (1966), this Court stated:

"In the case before us the appellant has alleged the acts of the defendant were *intended* to inflict extreme mental suffering.

"In our opinion the law of Michigan as set forth in *Stewart v Rudner, supra* [349 Mich 459; 84 NW2d 816 (1957)] and *Carter v General Motors Corp, supra,* [361 Mich 577; 106 NW2d 105 (1960)] is consistent with the principles enunciated in the Restatement of the Law, 1948 Supp, Torts § 46:

" 'One who, without a privilege to do so, intentionally causes severe emotional distress to another is liable (a) for such emotional distress, and (b) for bodily harm resulting from it.'
and as continued in comment (g) under the aforementioned section:

" 'In short, the rule stated in this section imposes

liability for intentionally causing severe emotional distress in those situations in which the actor's conduct has gone beyond all reasonable bounds of decency. The prohibited conduct is conduct which in the eyes of decent men and women in a civilized community is considered outrageous and intolerable. Generally, the case is one in which the recitation of the facts to the average member of the community would arouse his resentment against the actor and lead him to exclaim "Outrageous!".' " (Emphasis in the original.)

As previously noted, the judge's instruction did nothing more than mention the term "exemplary damages", with no elucidation whatsoever of the relevant law or the permissible scope of the jury's consideration. The record reveals that plaintiff's counsel included a charge on exemplary damages that the judge admittedly overlooked; further, that Preferred Mutual's counsel forthrightly objected to the submission of any charge on punitive or exemplary damages.

In *Smith-Douglass v Walch,* 391 Mich 201, 204; 215 NW2d 142, 144 (1974), the Court stated:

"Where, however, the record is completely silent as to *any* instruction on the controlling legal issue supported by the testimony presented to the jury, a new trial may be ordered." (Emphasis in the original.)

It is impossible for us to determine the fraction of the award for plaintiff that represents the jury's consideration of exemplary damages. We must reverse and remand for a new trial. For purposes of retrial, we note our opinion that the circuit judge was in error in excluding defense proposed exhibits "H" and "I" from evidence.

Reversed and remanded for a new trial.