KALAMAZOO AVIATION, INC. v ROYAL GLOBE INSURANCE
COMPANY

INSURANCE—AVIATION—EXCLUSION PROVISIONS—STRICT CONSTRUC-
TION—PROPERTY DAMAGE TO AIRPLANES—DIRECTED VERDICT.

Exclusion provisions in insurance contracts are to be strictly
construed against the insurer; therefore, a trial judge was
correct in determining that an exclusion provision, in an insur-
ance contract which insured the plaintiff for property damage
to airplanes used in an airplane rental business, which ex-
cluded from coverage damages resulting from arrest or deten-
tion by governmental agents, was not ambiguous and did not
exclude from coverage damages to an airplane caused by a
pilot's attempt to escape arrest; therefore, a directed verdict for
the insured was appropriate.

Appeal from Kalamazoo, Robert L. Borsos, J.
Submitted June 10, 1976, at Grand Rapids. (Docket
No. 25683.) Decided July 21, 1976. Leave to appeal
applied for.

Complaint by Kalamazoo Aviation, Inc., against
Royal Globe Insurance Company for recovery for
damages to an airplane insured by the defendant.
Judgment on a directed verdict for plaintiff. De-
fendant appeals. Affirmed.

*James, Dark & Craig,* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen,* for defendants.

Before: R. B. BURNS, P. J., and M. J. KELLY and
S. S. HUGHES,* JJ.

REFERENCE FOR POINTS IN HEADNOTE
44 Am Jur 2d, Insurance §§ 1321, 1330.                              .
* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

R. B. Burns, P. J. Defendant insurer appeals a directed verdict entered on behalf of plaintiff insured, a company in the business of renting small airplanes. Plaintiff rented a Piper Cherokee 6 to a Joseph Patti who was ostensibly going scuba diving in California. Plaintiff next heard about its plane from Federal customs officials in Arizona.

It turned out that Patti had flown the airplane to Arizona and excited the interest of the customs officials. Warren J. Parthen, U. S. Customs Service Patrol Officer, testified by deposition as to various actions by Patti that had raised suspicions of narcotics smuggling—extra gas cans in the plane, removal of seats, and the like.

Parthen had observed Patti fly the plane into Mexico without filing the required flight plan. Parthen's experience was that people who illegally fly over the border often return over the same spot, and he set up surveillance accordingly. Nine hours later, radar detected an airplane coming north out of Mexico. The plane crossed the border with its lights out and without having filed the required Border Penetration Report. An infrared detector revealed the plane to be a Piper Cherokee 6.

Parthen and another customs official pursued in their own plane and situated the craft immediately behind the Piper Cherokee so as to be undetectable. Parthen verified that this was the plane that had been under surveillance by its registration number.

The Piper Cherokee bypassed the mandatory ports of entry and landed at the airport in Chandler, Arizona. Parthen landed directly behind it. The Cherokee came to the end of the runway, turned around, and saw the other plane situated immediately behind it obstructing the runway.

The Cherokee attempted to swing around Parthen's plane and get up the runway. As a result, the tail of the Cherokee collided with the wing of the other airplane. The Cherokee's pilot then headed the airplane across a dirt area into some very rough terrain not meant to be used by airplanes under any circumstances. Parthen pursued on foot. The Cherokee became totally inoperable and came to rest, with Joseph Patti exiting the airplane and running from the officer. He was captured. The Cherokee was found to have been severely damaged.

The trial judge's decision in directing the verdict was based upon his construction of the contract of insurance between the parties. The policy contained an exclusion from coverage for losses resulting as follows:

"[From the] capture, seizure, arrest, restraint or detention or the consequence thereof or of any attempt thereat, or any taking of the property insured or damage to or destruction thereof by any Government or governmental authority or agent (whether secret or otherwise) or by any military, naval or usurped power, whether any of the foregoing be done by way of requisition or otherwise and whether in time of peace or war and whether lawful or unlawful."

The trial judge's opinion held that the contract of insurance must be "construed most severely" against the insurer, and that exclusions therein must be "narrowly interpreted". The judge concluded that the exclusion was not ambiguous, and that it was clearly intended to apply only to loss or damage "directly caused by acts solely by the detaining party". Believing that the policy was not intended "to cover carelessness or intentional wrongful actions of the pilot of the insured plane",

the court found that the damage to the plane was so caused: "The damage was not the attempted arrest, but the wrongful act of the pilot of the insured party." Thus finding the exclusion to be inapplicable, and finding no question for the jury, the court directed the verdict. Defendant's appeal urges us to reverse the court's "strained" construction of the exclusion's "plain meaning".

The trial judge correctly applied the rule of construction requiring that insurance contract exclusion provisions are to be strictly construed against the insurer. *Weaver v Michigan Mutual Liability Co,* 32 Mich App 605, 609; 189 NW2d 116, 118 (1971), *Michigan Mutual Liability Co v Karsten,* 13 Mich App 46, 50; 163 NW2d 670, 672 (1968).

The language of the central clause of the exclusion lends support to the "acts solely by the detaining party" logic of the trial court: "[No liability for] the property insured * * * damage[d] * * * by any * * * governmental authority or agent * * * ." It is manifest from the record that the airplane was damaged not by Parthen but by the gratuitously careless and wrongful flight of Patti.

Affirmed. Costs to plaintiff.