AMERICAN FELLOWSHIP MUTUAL INSURANCE COMPANY v
INSURANCE COMPANY OF NORTH AMERICA

Docket No. 78-403. Submitted April 5, 1979, at Detroit.—Decided June
6, 1979.

Norene Wudarcki brought an action against plaintiff, American
Fellowship Mutual Insurance Company (AFM), for damages for
personal injuries she sustained in an attack in a parking lot in
which she rented space. The lot's mechanical gate designed to
control admission had been damaged two months prior to the
attack by a motorist insured by AFM, which was charged with
negligence and breach of contract in failing to repair the gate,
through which the attackers presumably gained entrance to
the parking lot. AFM filed suit against defendant, Insurance
Company of North America (INA) seeking a declaration that a
policy of insurance issued by INA to AFM should cover any
liability of AFM to Norene Wudarcki. The Wayne Circuit
Court, Horace W. Gilmore, J., granted summary judgment for
defendant on the basis of an exclusion of insurance coverage
for "personal injury or property damage due to the rendering
of or failure to render * * * any professional service". Plaintiff
appeals. *Held:*

Claims adjusting services by AFM constitute the rendering of
"professional services" within the meaning of the policy exclu-
sion.

Affirmed.

1. INSURANCE — EXCLUSIONS FROM COVERAGE — PROFESSIONAL SER-
   VICES — ADJUSTING SERVICES.

   Adjusting services performed by an insurance company fall
   within a liability policy exclusion for "personal injury or prop-
   erty damage due to the rendering of or failure to render * * *
   any professional service".

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 44 Am Jur 2d, Insurance § 1429.
Coverage, and exclusions, of liability or indemnity policy on physi-
cian, surgeon, dentist, and the like. 35 ALR2d 452.

2. Insurance — Exclusions From Coverage — Professional Services — Adjusting Services.

An exclusion from coverage liability for "personal injury or property damage due to the rendering of or failure to render * * * any professional service" in a liability policy issued to an insurance company properly excludes from coverage liability for any business activity conducted by the insured.

*Daniel Zolkower,* for plaintiff.

*Harvey, Kruse & Westen, P.C.,* for defendant.

Before: Beasley, P.J., and Allen and D. C. Riley, JJ.

Beasley, P.J. Plaintiff, American Fellowship Mutual Insurance Company (AFM), sought a declaratory judgment against defendant, Insurance Company of North America (INA), to determine that a policy of insurance issued by INA would cover the alleged liability of AFM to Norene Wudarcki. The trial court granted defendant's motion for summary judgment. Plaintiff appeals as of right.

AFM is the defendant in a civil action brought by Norene Wudarcki to recover damages for personal injuries and other losses. In her complaint, she avers that she suffered severe injuries when she was attacked in a parking lot in which she rented a parking space. The mechanical gate designed to control admission to the lot had been damaged two months earlier by an automobile driven by an insured of AFM. Presumably, the attackers gained entrance to the parking lot via the damaged gate. AFM is charged with negligence and breach of contract for failure to have the gate repaired in timely fashion. INA has been asked to take over AFM's defense under the terms of an insurance policy purchased by AFM from INA.

The sole question to be determined on appeal is whether the contract of insurance issued by INA covers liability arising out of the alleged negligent operation of AFM's business.

INA's policy is labeled an "Office Building Policy" and insures AFM's building at 2624 West Grand Boulevard in Detroit. The INA policy does not cover 2281 West Grand Boulevard, which is the address of an apartment adjoining the parking lot where the attack on Ms. Wudarcki took place. The types of coverage listed are: (1) real property, (2) personal property, (3) additional expenses, and (4) certain "legal liabilities" arising out of an "accident".

Plaintiff, AFM, claims the policy is a general liability one and defendant, INA, does not appear to deny that premise. However, the policy contains several exclusions, one of which reads as follows:

"n. personal injury or property damage due to:

"(1) the rendering of or failure to render

"(a) medical, surgical, dental, X-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

"(b) any service or treatment conducive to health or of a professional nature;

"(c) any cosmetic, tonsorial, massage, physiotherapy, chiropody, hearing aid, optical or optometrical services or treatments;

"(d) any professional service; * * *."

AFM contends that the term "professional service" was not defined in the INA policy and that the trial court's determination that the adjusting services of AFM were professional services within the meaning of the insurance contract was error.

In ruling that the adjusting services of AFM constituted professional services, the trial court

cited OAG 1975-1976, No 4, 899, pp 181, 183-184 (October 23, 1975):

"* * * it is my opinion that where the legislature creates a regulatory board with power to license and regulate an occupation, that occupation becomes a profession within the meaning of the Const 1963, art 5, § 5."

The court also looked to the Michigan Professional Service Corporation act, MCL 450.221; *et seq.;* MSA 21.315(1) *et seq.,* and specifically, MCL 450.222; MSA 21.315(2), wherein a "professional service" is defined as a "personal service to the public which requires as a condition precedent to the rendering of such service the obtaining of a license or other legal authorization". AFM would appear to be within that definition.

The "professional service" exclusion in this case excludes "personal injury or property damage due to the rendering of or failure to render * * * any professional service". In *Hercules Drawn Steel Corp v Doran Electric Co, Inc,*[1] the court reviewed the applicable rules for interpretation of contracts. Although the Court stated that indemnity claims are to be construed strictly against the party who drafts them, it is the duty of the court to determine, to the extent possible, the true intent of the parties by construction of the instrument. In determining the parties' true intent, a court considers the language employed, the subject matter and the surrounding circumstances under which the parties entered into the agreement.[2]

Although one might argue in the abstract

---

[1] 64 Mich App 117, 120-121; 235 NW2d 82 (1975).

[2] *Id.,* p 121. *Kellogg v Kellogg Toasted Corn Flake Co,* 212 Mich 95; 180 NW 397 (1920), *Montgomery v Central National Bank & Trust Co of Battle Creek,* 267 Mich 142; 255 NW 274 (1934).

whether the services of an insurance adjustor could be deemed a "professional service", in reviewing the surrounding exclusions as stated in clause "n" of the policy, it is clear that services such as those performed by plaintiff were intended to be excluded from coverage.

This same interpretation has been given to similar exclusions in other jurisdictions. An "owners', landlords' and tenants' " insurance policy issued to a beauty shop operator and covering, as the court put it, "ordinary risks of dwellings and commercial buildings", was involved in *Knorr v Commercial Casualty Ins Co.*[3] An exclusion specifically provided that the policy did not apply to the rendering of any "professional services" by any person, including any physician, surgeon, dentist, optician, nurse, barber, manicurist, masseur, chiropodist, or other attendants. The injury occurred when a customer seated under a hair dryer was struck on the head when the machine unexplainedly fell forward and downward. Holding that the drying of a customer's hair in the beauty parlor by means of a mechanical hair dryer constituted professional services and, thus, came within the exclusion of the policy, the court said that since the policy was issued specifically to cover a beauty parlor, it was clear that the term "professional services" referred to the technical work performed by beauticians and hairdressers.

In *Multnomah County v Oregon Automobile Ins Co,*[4] plaintiff sued the county for the failure of prison authorities to give a prisoner a necessary shot of insulin. The court, in interpreting an exclusion for a "professional act or service" within a liability policy, in which there was an exclusion

[3] 171 Pa Super 488; 90 A2d 387 (1952).

[4] 256 Or 24; 470 P2d 147 (1970).

for "(2) [i]njury, sickness, disease, death or destruction due to the rendering of or failure to render any professional service", found that a jail medical technician was rendering a "professional service" and stated:

"In determining whether a particular act or omission is of a professional nature, the act or omission itself must be looked to and not the title or character of the party who performs or fails to perform the act. *Marx v Hartford Accident and Indemnity Company, supra.* The decision to give or to withhold insulin required the application of special learning which the medical attendant lacked and Barendrecht [the prisoner] was therefore deprived of a professional service which, if given, would have resulted in the required injection.

"5. The County also contends that the provision is ambiguous and can be construed as being applicable only to a set of facts which involve a direct and immediate failure of a licensed physician to act or to act properly in relation to a patient. In effect, the contention is that the exception contemplates only a set of facts which would substantiate an action of medical malpractice against a physician. We cannot so construe it. The language is plain and unambiguous. It excepts from coverage *the insured's* failure to render a professional service." 256 Or 24, 28-29.

In the case at bar, the trial court did not err in determining that the "professional services" exclusion, as used in the life insurance contract, refers to any business activity conducted by plaintiff insurance company. Moreover, a contract of insurance is not to be construed to indemnify a party against the consequences of its own negligence unless such intent is unequivocally stated in the clearest language.[5] No such language which would cover the services and business activity of plaintiff,

---

[5] *Michigan Mutual Liability Ins Co v Fruehauf Corp,* 63 Mich App 109, 118; 234 NW2d 424 (1975).

AFM, within the building is expressed. Rather, the exclusion clause "n", viewed in full context, makes it clear that the insurance policy was only intended to cover liabilities arising out of building ownership and/or occupancy.

Affirmed.