SMITH v LUMBERMEN'S MUTUAL INSURANCE COMPANY

Docket No. 47778. Submitted June 9, 1980, at Detroit.—Decided October 23, 1980. Leave to appeal applied for.

Robroy A. Smith, III, brought an action against Lumbermen's Mutual Insurance Company, Alfred V. Lynas, and Ronald Weichman, and moved for a declaratory judgment that defendant insurance company was liable to him under an insurance policy for damages to a dwelling. Defendant insurance company also filed a motion for declaratory judgment. Oakland Circuit Court, Francis X. O'Brien, J., granted plaintiff's motion and denied defendant's. Defendant insurance company appeals, alleging that the trial court erred in construing the vacancy clause in the insurance policy in favor of plaintiff. *Held:*

The trial court properly found that the premises in question were occupied for purposes of construction of the vacancy clause in the insurance policy issued by defendant insurance company. Said defendant was aware that the premises were being sold and impliedly contemplated that temporary vacancies would occur incident to a change of residents. Absent a clear expression to the contrary in the policy, such vacancy did not render the premises unoccupied.

Affirmed.

BASHARA, P.J., dissented. He would hold that the permanent discontinuance of residency by defendant Lynas, without tender of possession to plaintiff, rendered the premises unoccupied within the meaning of the insurance contract. In addition, he would hold that the actions of defendant Lynas in discontinu-

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance § 271.

[2] 43 Am Jur 2d, Insurance §§ 260, 264.

[3] 43 Am Jur 2d, Insurance §§ 865, 943.

[4] 4 Am Jur 2d, Appeal and Error § 119.

   5 Am Jur 2d, Appeal and Error § 872.

   22 Am Jur 2d, Declaratory Judgments § 9.

[5] 43 Am Jur 2d, Insurance § 950.

[6] 43 Am Jur 2d, Insurance § 488.

   77 Am Jur 2d, Vendor and Purchaser § 371.

ing fuel service in winter increased the hazard which resulted in the damage by means within the control or knowledge of insured defendant Lynas, and that such actions were expressly set forth in the policy as relieving defendant insurance company from liability. He would hold that plaintiff's recourse is properly against defendant Lynas and would reverse and remand for entry of judgment in favor of defendant insurance company.

### OPINION OF THE COURT

1. INSURANCE — CONTRACTS — AMBIGUITY — JUDICIAL CONSTRUCTION.

Any doubt or ambiguity in a contract of insurance, drafted by an insurer, should be construed by a court most favorably to the insured, particularly where exclusions and exceptions are under consideration.

2. INSURANCE — CONTRACTS — AMBIGUITY — JUDICIAL CONSTRUCTION — INTENT OF PARTIES.

An insured should not always prevail where there is construction by a court regarding an ambiguity in a contract of insurance; it is the duty of a court to determine the true intent of the parties insofar as it is possible, and a patently unreasonable interpretation of a contractual ambiguity should not be employed merely to allow an insured to recover his losses.

3. INSURANCE — CONTRACTS — VACANCY CLAUSES — JUDICIAL CONSTRUCTION — WORDS AND PHRASES.

An insured can be said to be occupying a building without continuous possession for purposes of construing a vacancy clause of a contract of insurance where the insurer is aware that a dwelling is being sold on a land contract, it being impliedly contemplated by the parties to the insurance contract that any temporary vacancy caused by or incident to a change in residents is not within such clause absent a clear expression of intent to the contrary.

4. APPEAL — DECLARATORY JUDGMENTS — REVIEW DE NOVO — STANDARD OF REVIEW.

Actions in the nature of declaratory judgments are reviewed on appeal *de novo* on the record, and the findings of a trial court will not be reversed absent clear error.

Dɪssᴇɴᴛ ʙʏ Bᴀsʜᴀʀᴀ, P.J.

5. Iɴsᴜʀᴀɴᴄᴇ — Cᴏɴᴛʀᴀᴄᴛs — Vᴀᴄᴀɴᴄʏ Cʟᴀᴜsᴇs — Jᴜᴅɪᴄɪᴀʟ Cᴏɴ-
STRUCTION.

A temporary absence from a building for business, vacation, or
illness should not render a premises unoccupied for purposes of
construing a vacancy clause of a contract of insurance, how-
ever, a permanent discontinuance of residence by one person
without tender of possession to another should render the
premises vacant and unoccupied for purposes of such construc-
tion.

6. Iɴsᴜʀᴀɴᴄᴇ — Cᴏɴᴛʀᴀᴄᴛs — Cᴀᴜsᴇ ᴏꜰ Dᴀᴍᴀɢᴇs Iɴᴄʀᴇᴀsᴇᴅ ʙʏ
Iɴsᴜʀᴇᴅ — Rᴇᴄᴏᴜʀsᴇ ꜰᴏʀ Dᴀᴍᴀɢᴇs.

Proper recourse of a land contract vendee for damages to a
dwelling where the hazard which caused the damage was
increased by means within the control or knowledge of a land
contract vendor who was insured with the vendee under the
same insurance policy should be against such vendor and not
his insurer where a contract of insurance excludes liability of
the insurer under such circumstances.

*Booth, Patterson, Lee, Karlstrom & Steckling,*
for plaintiff.

*Davies, Rudzki & Bremer, P.C.,* for defendant
Lumbermen's Mutual Insurance Company.

*Stephen K. Valentine, Jr., P.C.,* for defendants
Alfred Lynas and Ronald Weichman.

Before: Bᴀsʜᴀʀᴀ, P.J., and D. C. Rɪʟᴇʏ and E. A.
Qᴜɪɴɴᴇʟʟ,* JJ.

E. A. Qᴜɪɴɴᴇʟʟ, J. Plaintiff filed a complaint and
moved for a declaratory judgment that defendant
Lumbermen's Mutual Insurance Company (herein-
after Lumbermen's) was liable to him under an
insurance policy for damages to a dwelling caused
by the freezing of boiler and water pipes. Lumber-
men's denied liability and also moved for declara-
tory judgment. The trial court granted plaintiff's

* Circuit judge, sitting on the Court of Appeals by assignment.

motion for declaratory judgment. Lumbermen's now appeals as of right.

This case comes to this Court on stipulated facts. Defendant Lynas, the land contract vendor of the subject dwelling, agreed to tender possession to plaintiff on or before January 9, 1977. As part of the agreement, Lynas was permitted to remain in possession of the subject premises for 60 days after closing or until tender of possession was accomplished by turning over the keys to the premises. An appropriate proration of the occupancy charge was made. Also, as part of the agreement, plaintiff was to obtain insurance coverage on the subject property. Plaintiff obtained a policy of insurance from Lumbermen's, naming both himself and Lynas as insureds. The premium was paid entirely by the plaintiff.

The closing of the deal took place at the hospital where defendant Lynas was then a patient. In late November, 1976, Lynas returned to the subject premises. Sometime during the first week of December, Lynas moved into an apartment for which he had taken out a lease. However, many of his household items and personal possessions remained within the subject dwelling. On December 6, 1976, Lynas notified the Marathon Oil Company that "the house has been sold, please discontinue service".

In mid-December, 1976, plaintiff's mother was informed by the realtor handling the sale of the possibility that plaintiff could move into the dwelling prior to January 10, 1977. However, no tender of possession by turning over the keys was accomplished.

On December 22, 1976, Lynas fell in his apartment and was admitted again to a hospital for treatment. Between December 25, 1976, and Janu-

ary 9, 1977, while Lynas was in the hospital, the supply of oil to the premises became depleted, rendering no heat to the dwelling and resulting in the water pipes freezing and bursting, causing extensive damage. On January 9, 1977, plaintiff entered the premises after Lynas tendered the keys to the premises. The damage had been discovered earlier that day by Lynas' daughter when she was there to remove Lynas' remaining property.

On January 11, 1977, plaintiff received $1,200, being the total amount escrowed for rent at the time of the closing. Following plaintiff's notification of loss, Lumbermen's denied coverage for the damages, maintaining that the premises were "vacant or unoccupied" within the meaning of the insurance policy.

The portion of the insurance policy upon which Lumbermen's relies provided under the general heading of "PERILS INSURED AGAINST" that:

"This policy insures against direct loss to the property covered by the following perils as defined and limited herein:

*    *    *

"17. *Freezing of plumbing, heating and air conditioning systems and domestic appliances,* but excluding loss caused by and resulting from freezing while the building covered is vacant or unoccupied, unless the insured shall have exercised due diligence with respect to maintaining heat in the building, or unless the plumbing and heating systems and domestic appliances had been drained and the water supply shut off during such vacancy or unoccupancy."

The trial court found that this provision was ambiguous and resorted to rules of construction in resolving the matter against Lumbermen's. We agree with the lower court that the provision in

question is ambiguous. Neither "vacant" nor "unoccupied" is defined in the insurance policy. There exists a continuum of possible uses between the two obvious points at which we can say that the clause in the policy does and does not apply. On the one hand, where residents of a house are physically inside the dwelling at the very moment of the incident resulting in the loss, it is apparent that the building is not "vacant or unoccupied". On the other hand, where the building stands totally vacant, devoid of all signs of human habitation when the loss is suffered, it is equally clear that the building is "vacant or unoccupied". A plethora of other possible uses is manifest, however, and the quality or extent of any given use may not readily lend itself to categorization as either vacant or full, occupied or unoccupied.

If there is any doubt or ambiguity in a contract of insurance which has been drafted by the insurer, it must be construed most favorably to the insured. *Gorham v Peerless Life Ins Co,* 368 Mich 335; 118 NW2d 306 (1962), *Foremost Life Ins Co v Waters,* 88 Mich App 599, 604; 278 NW2d 688 (1979). This rule of construction has particular force where contract exclusions and exceptions are under consideration. *Whittaker Corp v Michigan Mutual Liability Co,* 58 Mich App 34, 36; 227 NW2d 1 (1975), *Kalamazoo Aviation, Inc v Royal Globe Ins Co,* 70 Mich App 267, 270; 245 NW2d 754 (1976), *lv den* 399 Mich 871 (1977). This does not mean, however, that the insured must always prevail if there is an ambiguity. It is still the duty of the courts to determine the true intent of the parties insofar as this is possible. A patently unreasonable interpretation of a contractual ambiguity will not be employed merely to allow the insured to recover his losses. *American Fellowship*

*Mutual Ins Co v Ins Co of North America,* 90 Mich App 633, 636; 282 NW2d 425 (1979).

Lumbermen's contends that past decisions of the Michigan Supreme Court preclude the possibility of our construing the clause in dispute in plaintiff's favor. In *Bonenfant v American Fire Ins Co,* 76 Mich 653, 659; 43 NW 682 (1889), the Supreme Court held that: "Occupancy implies an actual use of the house as a dwelling place." Lumbermen's points to the fact that nobody was using the house as a dwelling at the time the pipes froze and burst and concludes that it was not occupied. We disagree. The proposition that occupancy implies an actual use of the premises as a dwelling house first found its way into Michigan jurisprudence in *Shackelton v Sun Fire Office of London, England,* 55 Mich 288, 292; 21 NW 343 (1884). However, in *Shackelton,* as in the instant case, the house in question was not being used as a dwelling as this term is normally used at the time of the loss. In *Shackelton,* the insured had rented the premises to tenants who had moved out of the house. She decided to occupy the premises herself. Toward this end, she moved furniture and goods into the building and readied it by cleaning. As her husband was ill and could only be left alone for short periods of time, the insured did not stay any nights at the house. The house ultimately burned while the insured was on business in northeastern Michigan before she ever began actually living in the house. Nonetheless, the Supreme Court ruled that the policy was still in force. Although occupancy may imply an actual use of the house as a dwelling place, circumstances may arise in which an insured can be said to be "occupying" a building without continuous possession.

Lumbermen's also relies on *Richards v Conti-*

*nental Ins Co of the City of New York,* 83 Mich 508; 47 NW 350 (1890). In *Richards,* however, the insured had instructed his tenant to vacate the house, which the tenant did. Neither the landlord nor any other person was moving in to take his place. This is not the situation here where plaintiff intended to move into the house when defendant Lynas completely vacated it.

The lower court relied upon *Krajenke v Preferred Mutual Ins Co,* 68 Mich App 211; 242 NW2d 70 (1976), in reaching its conclusion that the policy remained in full force and effect. In *Krajenke,* the insured's loss came at a time when she was on one of her numerous extended vacations. We held that her temporary physical absence from the residence did not render the house "vacant or unoccupied". As Lumbermen's notes, *Krajenke* can be distinguished from the case at bar. However, in our opinion the similarities between the cases are more important than the differences.

Although defendant Lynas did not intend to return and live in the subject dwelling, plaintiff most assuredly did. Thus, at all times there was a mere temporary physical absence from the house which did not render it unoccupied. Lumbermen's knew at the time that it issued the policy that the subject dwelling was being sold under land contract and that the individuals who occupied the house would change. In many respects, what occurred here is just what happens when rental property is between tenants. As 43 Am Jur 2d, Insurance, § 951, p 900 states:

"The great majority of courts have adopted, as to rented property, a liberal construction of provisions against the property becoming vacant and unoccupied. They hold that it is impliedly contemplated by the parties to the contract that any temporary vacancy

caused by or incident to a change or removal of tenants is not within the vacancy or unoccupancy clause, and that a reasonable time will be allowed the insured to obtain other tenants before the forfeiture of the policy may be effected. Following this principle, it has been held that a provision avoiding a policy of insurance if the buildings become unoccupied does not apply where a tenant has commenced moving and part of his goods have been taken away and part remain on the insured premises, or where the buildings are vacant for a few days pending a change of tenants. It has likewise been held that where an outgoing tenant has partially removed from the insured premises and the incoming tenant has partially occupied such premises, or where the owner has commenced renovating the premises for the incoming tenant, the premises are not vacant and unoccupied." (Footnotes omitted.)

By analogy, it seems to us that, where the insurer is aware that the dwelling is being sold on a land contract, it is "impliedly contemplated by the parties to the (insurance) contract that any temporary vacancy caused by or incident to a change" to allow the old residents to leave the premises and the new residents to arrive is not within the vacancy clause, absent a clear expression of this intent in the insurance policy.

Having concluded that the premises were not "vacant or unoccupied", we need not address the "due diligence" question.

We review actions in the nature of declaratory judgments *de novo* on the record. We will not reverse the findings of the lower court unless they are clearly erroneous. *McComb v McComb,* 9 Mich App 70, 74; 155 NW2d 860 (1967). In the case at bar, no error was committed.

Affirmed.

D. C. RILEY, J., concurred.

BASHARA, P.J. *(dissenting)*. I respectfully dissent. As stated in the majority opinion, "occupancy implies an actual use of the house as a dwelling place". *Bonenfant v American Fire Ins Co,* 76 Mich 653, 659; 43 NW 682 (1889). Although the courts have held that a temporary absence for business, vacation, or illness does not render the premises "unoccupied", the case at bar is distinguishable. There was clearly a permanent discontinuance of residency by Mr. Lynas without tender of possession to the plaintiff. Until possession was given to plaintiff, the home was "vacant" and "unoccupied" within the meaning of the insurance contract. *Richards v Continental Ins Co of the City of New York,* 83 Mich 508; 47 NW 350 (1890).

However, my conclusion is not based on the occupancy requirement alone. Another provision of the insurance agreement reads:

"Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring
"(a) while the hazard is increased by any means within the control or knowledge of the insured * * *."

Mr. Lynas, a named insured, deliberately informed the fuel supplier to discontinue service in the dead of winter. Such action on the part of the insured, which surely caused the pipes to freeze and the resulting damages, acted to relieve the defendant from liability. Therefore, even if the premises were "occupied", it is my feeling that the trial court should have rejected plaintiff's motion for declaratory judgment. Plaintiff's recourse is properly against Mr. Lynas.

I would reverse and remand for entry of judgment in favor of defendant.