951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ENGINEERING TECHNOLOGY, LTD., Plaintiff-Appellant,
v.
AETNA CASUALTY & SURETY CO., Defendant-Appellee.
 No. 91-1659.
 United States Court of Appeals, Sixth Circuit.
 Dec. 27, 1991.
 
 Before BOYCE F. MARTIN, Jr. and SUHRHEINRICH, Circuit Judges, and HILLMAN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Engineering Technology, Ltd. ("Entech") appeals from summary judgment in favor of Aetna Casualty & Surety Company in this diversity suit. The district court held that Entech's conduct giving rise to separate litigation in California was beyond the coverage of an insurance policy issued by Aetna, and therefore Aetna was not obligated to defend Entech. We affirm.
 
 
 2
 * In July 1988 Peterbilt Motors Co. filed suit in California against Entech alleging misappropriation of trade secrets, breach of contract, and negligence. Entech designs and develops prototype models of various trucks and automobiles. Peterbilt is a manufacturer of such vehicles.
 
 
 3
 After promising Peterbilt that its research on the P-12 truck cab would remain confidential, Entech distributed a promotional brochure at an annual trucking show that contained a full-color image of the P-12. At the time of this disclosure Entech carried a commercial liability insurance policy with Aetna. Aetna declined to defend Entech in the Peterbilt litigation because "there was no potential of coverage" under its policy.
 
 II
 
 4
 Challenges to summary judgment are reviewed de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). We apply Michigan law to interpret the contested insurance agreement. See Douglass v. Paine, 141 Mich. 485, 497 (1905); Structural Dyn. Res. Corp. v. Engineering Mech. Res. Corp., 401 F.Supp. 1102 (E.D.Michigan 1975).
 
 
 5
 Entech makes two arguments on appeal. First, Aetna's duty to defend arose from the personal injury provision of the insurance agreement. Coverage exists notwithstanding the policy's professional services exclusion. Second, Aetna has waived its right to deny liability because its declination letter failed to refer to the policy's personal injury provision.
 
 
 6
 * An insurer's duty to defend is broader than its duty to indemnify. The duty to defend is triggered by the policy's coverage, the duty to indemnify by a finding of liability. There is no duty to defend against actions not covered by the policy. Zurich Insurance Co. v. Rombough, 384 Mich. 228 (1970). The question before us is whether the actions alleged by Peterbilt are covered by the insurance policy Aetna sold to Entech.
 
 The policy defines personal injury as
 
 7
 injury, other than "bodily injury", arising out of one or more of the following offenses:
 
 
 8
 a. False arrest, detention or imprisonment;
 
 
 9
 b. Malicious prosecution;
 
 
 10
 c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
 
 
 11
 d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
 
 
 12
 e. Oral or written publication of material that violates a person's right of privacy.
 
 
 13
 The agreement goes on to limit personal injury coverage to offenses "[a]rising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you."
 
 
 14
 Entech declares that circulation of a promotional brochure at a trade show is not advertising. One purpose of a trade show is to demonstrate or represent a company's products to potential customers. One purpose of such gatherings is, in other words, to advertise. The unambiguous language of the policy excludes coverage for "advertising ... done by or for you." Entech's effort to escape application of this language fails.
 
 
 15
 Entech fares no better in its attempt to locate coverage in the policy's language on disparagement. A disparaging statement is one that discredits or casts into doubt another's work or product. The inclusion of a picture of the P-12 is not, by itself, an act that discredits Peterbilt products. Indeed, it is customary among advertisers to display their wares in the best rather than worst possible light. We have no reason to think Entech departed from this time-honored axiom of advertising.
 
 
 16
 Entech submits in the alternative that coverage exists because Peterbilt's "right of privacy" under the insurance agreement was invaded. The policy does not define the right of privacy. The Michigan Supreme Court has recognized the following four kinds of invasion of privacy:
 
 
 17
 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.
 
 
 18
 2. Public disclosure of embarrassing private facts about the plaintiff.
 
 
 19
 3. Publicity which places the plaintiff in a false light in the public eye.
 
 
 20
 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.
 
 
 21
 Beaumont v. Brown, 401 Mich. 80, 95 n. 10 (1977) (quoting Prosser, Privacy, 48 Cal.L.Rev. 383, 388 (1960)).
 
 
 22
 Entech's public display of secrets belonging to Peterbilt does not fit within any of these recognized kinds of privacy intrusion. To circumvent this result, Entech invites us to define privacy as "any tort involving an intrusion against something or disclosure of information in which one may have an interest in keeping private." This goes too far. We can find no authority for so expansive an approach to the common law cause of action for invasion of privacy. Nor is such a revision consistent with Michigan law as propounded in Beaumont.
 
 
 23
 We therefore do not believe the policy's personal injury provision provides coverage to Entech for the actions alleged by Peterbilt. It follows that the personal injury provision cannot be the vehicle for assigning to Aetna the duty to defend.
 
 
 24
 The parties also dispute the applicability of the policy's professional services exclusion. This exclusion states that the policy does not cover injury arising out of professional services, defined as
 
 
 25
 1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
 
 
 26
 2. Supervisory, inspection or engineering services.
 
 
 27
 Michigan courts construing similar professional services provisions place considerable emphasis on the intent of the parties. See American Fellowship Mutual Insurance Company v. INA, 90 Mich.App. 633 (1979); Smith v. Lumbermen's Mutual Insurance Company, 101 Mich.App. 78 (1980). Adopting this approach, we find no reason to think the parties intended something other than what the plain language of the exclusion says. Entech's design for the P-12 is a "professional service" and is excluded from coverage by the clear terms of the policy.
 
 B
 
 28
 In February 1989 Aetna wrote a letter to Entech identifying the reasons for its declination to defend. Entech contends that because Aetna failed to mention the policy's personal injury provision or professional services exclusion, Aetna is now estopped to deny liability on those grounds. Lee v. Evergreen, 151 Mich.App. 281 (1986) (once an insurer denies coverage and states its defenses, it has waived or is estopped from raising new defenses).
 
 
 29
 Aetna replies that at the time of its declination letter personal injury coverage did not yet exist. The policy was reformed in March 1989 to include such coverage. Aetna wonders how it can be estopped to deny liability for a reason it could not have known at the time of the original declination.
 
 
 30
 We agree with Aetna because to estop it from denying coverage under the personal injury provision would amount to a judicial expansion of Entech's coverage. Entech would potentially receive the benefits of personal injury coverage before the agreement was reformed to include such benefits. Under Michigan law, waiver and estoppel are unavailable to broaden the coverage of an insurance policy. Lee v. Evergreen, 151 Mich.App. at 285-286. Aetna was not required in February to anticipate and rely on a provision added to the policy in March. The law does not demand that parties be prophetic.
 
 III
 
 31
 In sum, Entech's circulation of a promotional brochure containing a picture of the P-12 was not covered by the Aetna policy. Nor are we persuaded that Aetna waived its right to deny liability under the personal injury provision. The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Douglas W. Hillman, Senior District Judge for the Western District of Michigan, sitting by designation